JOHN M. BYERS *v.* SIMEON T. TABB ET AL.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS. *Foreign assignments.* *Situs of debts.*

   Debts due from residents of this state to a creditor in another state, payable there, for goods there purchased, and which are evidenced by accounts there kept by the creditor, have their situs at the creditor's domicile and pass by a general assignment there made by him.

2. SAME. *Preferences provided by foreign law.*

   A general assignment made in another state by a resident there, not on its face in conflict with the laws or public policy of this state, will be held good as to personal property having a situs here, although the laws of the state where the deed was executed provide for preferences forbidden by our laws, the record not disclosing such preferences.

FROM the chancery court of Clay county.

HON. BAXTER MCFARLAND, Chancellor.

Tabb and others, appellees, were the complainants in the court below. Byers, appellant, was a defendant there. The decree of the chancery court was in complainant's favor, and defendant, John M. Byers, appeals to the supreme court. The facts are stated in the opinion.

*Roane & McClellan*, for appellant.

The general rule is that an assignment valid where made is valid everywhere. There are exceptions to this rule, as where a foreign assignment attempts to convey property located in a state whose statute and whose public policy it contravenes; but the court will not do away with the foreign assignment because it seeks the same end by different means. *Fuller* v. *Steiglits*, 22 Am. Reps., 312; *Pierce* v. *O'Bryan*, 37 Am. Reps., 360;

*Birdseye* v. *Baker*, 2 Lawyer's Rep. Ann., 99; Story's Conflict of Law, 558; *Hartford* v. *Paine*, 78 Am. Dec., 586; *Chewey* v. *Johnston*, 52 Am. Dec., 610; *Speed* v. *May*, 55 Am. Dec., 540; *Walter* v. *Whitlock*, 76 Am. Dec., 607; *Askew* v. *La Cyne*, 53 Am. Dec., 590; *Wilder* v. *Madox*, 59 Am. Rep., 617; *Coffin* v. *Kelling*, 83 Ky., 649; *Reubel* v. *Louisville Banking Co.*, 10 Ky. Law. Rep., 1021; *May* v. *Wannemacher*, 111 Mass., 202; *Long* v. *Girdwood*, 150 Pa. St., 413; *Thurston* v. *Rosenfield*, 42 Mo., 474; *Moore* v. *Willett*, 35 Barber, (N. Y.), 663; *Law* v. *Mills*, 18 Pa. St., 195; *Johnson* v. *Shapp*, 31 Ohio St., 617; *Sanderson* v. *Bradford*, 10 N. H., 260; *Moore* v. *Barnell*, 31 N. J. L., 90. We especially call attention to *Walter* v. *Whitlock*, 76 Am. Dec., 607; 3 Am. & Eng. Enc. L., 52, sec. 5, note 1.

For purposes of distribution of assets, either of a decedent or an assignor who assigns all of his assets to be distributed among his creditors, the situs of choses in action is at the place of the creditor's residence, and especially so when he is in possession of the evidence of debt. It is admitted by the pleadings, and shown by the record, that the assignee took possession of the books, accounts, notes, and choses in action in Kentucky, the place where the assignment was made, which are now claimed to be subject to the payment of complainant's debt by garnishment. The debts in controversy have no situs in Mississippi, and cannot be regarded as personal property within this state. This question is fully discussed and decided in the case of *Speed* v. *Kelly*, 59 Miss., 47; and *Jahier* v. *Rascoe*, 62 Miss., 699.

In *Speed* v. *Kelly*, above cited, decedent died in the state of Louisiana, intestate, having in his possession the evidence of the debt, although the debtor resided in the state of Mississippi. Letters of administration were granted to the administrator in Louisiana, and, afterwards, letters were applied for in Mississippi. Under the laws of Louisiana, the half-bloods would share in the distribution of the assets in Louisiana; whereas in

Mississippi the whole-bloods would inherit, to the exclusion of the half-bloods. The Mississippi courts held that the choses in action had no situs in the state of Mississippi, but would be distributed under the laws of Louisiana.

The situs of choses in action is the place where the creditor resides. *Birdseye* v. *Baker*, 82 Ga., s.c. 2 L. R. A., 99; *Askew* v. *La Cyne*, 52 Am. Rep., 590; *Speed* v. *May*, 55 Am. Dec., 540; *Fuller* v. *Steiglitz*, 22 Am. Rep., 312; *Winslow* v. *Fletcher*, 55 Am. Rep., 129; *Jahier* v. *Rascoe*, 62 Miss., 699.

By an examination of the Kentucky statute on assignments and comparing it with the Mississippi statute, we will observe that they are very similar, and there is absolutely nothing in the Kentucky statute that is repugnant to the statute or public policy of the state of Mississippi. The law of Kentucky contains very much the same provision in effect, though not exactly in the letter, as the Mississippi laws. It is required in Mississippi that a petition shall be filed in the chancery court, accompanied with a bond and schedule of the property and creditors, and that the estate shall be administered, where situated in Mississippi, in the chancery court. The Kentucky statute makes the same provision that the assignee must file his petition in the proper court in Kentucky, accompanied with a schedule of the property, and make all of the creditors of the assignor parties to the petition, and that he shall give bond and administer the assets for the benefit of creditors. We submit that the statute of Kentucky does not in any way contravene the policy or the statutes of Mississippi, and, therefore, under the authorities above cited, our courts will, through comity, enforce all the rights provided in said assignment law of the State of Kentucky.

It is claimed by counsel for complainants that the Kentucky statutes contravene the policy of Mississippi laws, in that the Kentucky statutes give certain preferred rights to certain cred-

itors in Kentucky. We submit to the court that this does not contravene the statutes of Mississippi or the public policy of Mississippi, as the Mississippi laws permit such preferences to be made in the assignment, if desired by the assignor. The assignor making the assignment in Kentucky, knowing the effect of the statute there, his assignment being a voluntary one, is made to take effect under such preferences. This has been construed not to be in contravention of the statute or of public policy in such cases made. *Pitman* v. *Marquardt*, 55 N. E. Rep., 894.

*Critz, Becket & Kimbrough,* for appellees.

There is no pretense that the assignment was ever filed or recorded in this state, nor that the assignee ever filed the petition and bond in any chancery court of this state, or ever filed any "inventory of the property and effects assigned," as required in code of 1892, §§ 117–120, or any schedule of liabilities as required by § 124. The effect of a violation of § 124 is to make void all preferences, and there are statutory preferences in this assignment under the Kentucky assignment statutes, sec. 74. The contentions of the complainants are two-fold:

1. That no "general assignment, where the property assigned shall exceed in value the sum of one thousand dollars," is effective in this state unless administered through the chancery courts of the state in the manner required by chapter 8 of the code of 1892, and that these requirements of our statutes not having been complied with, the attachment in this case binds the indebtedness of the debtors in this state from the date of service upon them. Code 1892, §§ 486, 487.

2. That a statutory assignment or insolvent law, such as Kentucky has, has no extra territorial force, and is not, as a matter of law, binding outside of the state where made, and that it will be enforced in another state only if it does not conflict with the laws or policy of that state, or prejudice

the rights of its citizens, or where prior rights have not intervened.

The appellant, in opposition to these contentions, set up two grounds of defense, which we will notice, as follows:

1. That our assignment law has no application to choses in action, or debts due by citizens of this state to a citizen of Kentucky, and by him conveyed by a general assignment executed in Kentucky, and that such claims are not embraced in the word "property" in code of 1892, § 117.

2. That the assignment in this case does not derive its force from the statutes of Kentucky, and is not a statutory assignment or conveyance under an insolvent law, but it is to be tested by a general rule of law that a conveyance of personal property or choses in action good by the law of the places where made is good everywhere.

The situs of personal property and nonnegotiable paper is where the property or debt is. If that were not so debts due a man nonresident could not be attached or garnisheed at all. Under our statutes which authorize the attachment and garnishment of debts due by citizens of this state to nonresidents, both in equity and at law, the situs of their debts is necessarily fixed in this state, for otherwise our courts could not be given jurisdiction of them, and attachments of such debts could not be had without service upon the nonresident defendant and without levy upon any other property as now provided by our statutes. It is settled by the great preponderance of authority that, except for purposes of taxation, the situs of choses in action and open accounts is the domicile of the debtor, and so well settled is this that the editors and publishers of the American and English Encyclopedia of Law only thought it necessary to devote a single paragraph to it and refer to the authorities. 22 Am. & Eng. Enc. L., 787, note 5; *Fisher* v. *Bassett*, 9 Leigh., 119; *Stearns* v. *Wright*, 51 N. H., 600; *Murphey* v. *Creighton*, 45 Iowa, 179; *Sullivan* v. *Forsdich*, 10 Hun (N. Y.), 173; *Swancy* v. *Scott*,

9 Humph. (Tenn.), 327; *Wyman* v. *Halstead,* 109 U. S., 654; *Smith* v. *Union Bank,* 5 Pet., 525; *Vaughn* v. *Barrett,* 5 V. & M., 337; *Upton* v. *Hubbard,* 73 Am. Dec. (Com. 28), 674; Story on Conflict of Laws, sec. 514; Drake on Attachments, sec. 474 and notes and sec. 465 (*a*).

But this is positively settled by *Beer* v. *Hooper,* 32 Miss., 246. The evident purpose of our assignment law as shown on its face was that in all cases of general assignments, whether foreign or domestic, the assigned property in the state should be administered here. The policy of our law is, in the language of *Woodard* v. *Brooks,* 128 Ill., 222, s.c. 15 Am. State Rep., 104, that our citizens, when there are assets here, shall not be put to the hazard of having these assets removed to a foreign jurisdiction, and then to the expense and trouble of going out of this state to collect their just debts. And our statute is perfectly fair to all. In protecting our own citizens it makes no discrimination against the citizens of other states. Under secs. 121–123, all creditors, from everywhere, can come here and participate.

If it could be conceded that our statute has no effect on foreign assignments, then we claim that the assignment in this case, being made under and with reference to the assignment statutes of Kentucky, is to be regarded as a statutory assignment of Kentucky. In such case it is said to be " the settled jurisprudence of this country " in regard to insolvent assignments under the laws of a state that they have no extra territorial force, and will not defeat a subsequent attachment in another state. 2 Kent's Com., marg., 406, 407, top 495, 497; *Green* v. *Moury,* 2 Baily, (S.C.), 163; *Barth* v. *Iroquois, etc.,* 63 Ill. App., 323; *Beer* v. *Hooper,* 32 Miss., 246; Story on Conf. Laws, secs. 410, 420; Burrill on Assignments, *337; 3 Am. & Eng. Enc. L. 20, and note 1, (2 Ed.); *Wursend* v. *Coxe,* 151 Ill., 62.

Of course, we admit the extra territorial force of an ordinary common law deed, but the point in this case is that statutory assignment or insolvent laws, such as Kentucky has,

cannot be enforced beyond the jurisdiction of the courts of that state, and assignments made under the statutes are only binding as to property in that state. Many of the states hold that even a common law assignment of choses in action is not effective until the choses in action have become choses in possession, because at common law a chose in action is not assignable. *United States* v. *Bank of United States*, 8 Robinson (La.), 262; *Olive* v. *Turner*, 2 Martin (N. S.) (La.), 93; *Ingraham* v. *Myer*, 13 Mass., 146; *Fox* v. *Adams*, 5 Greene (Me.), 245; *Varnum* v. *Camp*, 1 Greene (N. J.), 326; *Tuffts* v. *Manlove*, 73 Am. Dec., 614. And as to choses in action, the rule is that another state will not enforce assignments of them if contrary to its laws or policy or prejudicial to the interests of its own citizens. Burrill on Assignments, *337, *et seq.* And it seems that even to choses in action we would not be called on to extend any principle of comity to Kentucky, because Kentucky would not recognize a Mississippi assignment. Burrill on Assignments, *340, 341.

The principle that we invoke is that the laws of a state have no extraterritorial force, and that, if an assignment at any period of its existence or administration depends on the statutory law of a state for its validity or continuing force and effect, it is no more extensive than the statute. It is not a common law assignment, and has no extraterritorial force against rights acquired before the assigned property has been reduced to possession and brought into *custodia legis* under the jurisdiction of the foreign court. Under any view of the case, it is plain that this is a statutory assignment, and ineffectual to pass title in a foreign forum as against an attaching creditor. This is elementary, as shown in 2 Kent. Com., *406, 407; Story Confl. Laws, secs. 410-420; 3 Am. & Eng. Enc. L. (2d ed.), 20, note 3. This is the doctrine laid down in *Beer* v. *Hooper*, 32 Miss., 246.

No sort of general assignment, domestic or foreign, is binding in this state, if the estate exceeds $1,000, without the com-

pliance of the assignee with our statute, and a failure to comply in this case cuts off the defendant's claim, it matters not what the law of Kentucky is, and it matters not whether the assignment under the Kentucky law is a common law or statutory assignment.

Argued orally by *J. J. McClellan*, for appellant.

WOOD, C. J., delivered the opinion of the court.

On the thirty-first day of March, 1898, William H. Byers, a wholesale dealer in millinery in the city of Louisville, Kentucky, executed a general assignment of all his property, real, personal and mixed, wherever situated, to John M. Byers as assignee for the benefit of all his creditors. The conveyance was duly signed and acknowledged by both assignor and assignee, and was filed and recorded on the same day in the office of the clerk of the proper court in said city of Louisville. The assignee immediately took possession of the assigned property and proceeded to execute the trust.

Subsequently, in April, 1898, the appellees filed their bill of complaint in the chancery court of Clay county, Mississippi, alleging an indebtedness to them severally, in the amounts named in their bill by William H. Byers, the assignor, and had writs of garnishment issued and served upon many persons, who were retail merchants in Mississippi, and who were indebted to said William H. Byers for merchandise bought by them from the wholesale millinery house in Louisville of said William H. Byers. The indebtedness of these various garnishees amounted, in the aggregate, to about eight thousand dollars, and was evidenced by open accounts on the mercantile books of said William H. Byers. These accounts and the books containing them are, and have been since the execution of the assignment, in the possession of John M. Byers, the assignee, in Louisville, Ky.

In September, 1898, the said John M. Byers, by leave of the chancery court of Clay county, Mississippi, filed his peti-

tion asserting, as assignee, his claim to the several sums shown and admitted to be due by the respective garnishees, and praying that the same be paid into the court and turned over to him as assignee in said assignment.

At the same time William H. Byers, the assignor, filed his answer to the bill of complaint of. Tabb and others, admitting his indebtedness to complainants, as set up in their bill, and admitting the indebtedness to him, prior to his assignment, of the garnishees, severally, in the sums named in the bill of Tabb and others; but he avers that, on the thirty-first day of March, 1898, he made a deed of general assignment to John M. Byers, as assignee for the benefit of all his creditors, whereby he conveyed to said assignee all of his property and assets of every character, wherever situated, whereby all right to and interest in the accounts against the garnishees named in complainant's bill passed to his said assignee and became due to and collectible only by him, the assignee, and he, the assignor, had no interest in the same when complainants filed their bill.

Tabb, Anna Goodwin and Barbara Schmitt, three of the complainants to the bill in chancery in Clay county, are citizens of Louisville, Kentucky, and the remaining complainant, M. T. Allen, is a citizen of the State of Georgia, and all had knowledge of the assignment and its contents before filing their bill in chancery in Clay county.    After filing said bill, and before the decree here appealed from was entered, all the complainants filed their claims with the proper authority in the court in Kentucky under whose direction and order the assigned estate is being administered and distributed, praying to be allowed to receive their ratable parts of the dividend there ready in that court for distribution.    All their claims have been allowed by the Kentucky court, and Barbara Schmitt has received, by order of said court, $2,000 on her claim; and as to the remainder of her claim, and all the other claims of the three other complainants, though allowed by that court, the court

suspended any order for distribution, to await the result of the litigation in Mississippi.

By the assignment statutes of Kentucky, debts due by the assignor in the character of guardian, trustee of an express trust, etc., are made preferred debts. And by those statutes, assignments shall not be invalidated by reason of any interest of the assignor, whether appearing on the face of the deed of assignment or otherwise, unless the assignor be solvent.

Where is the situs of the accounts evidencing the several indebtedness of the various garnishees?

The accounts were made by retail merchants doing business in Mississippi in the purchase of goods from a wholesale merchant in Louisville. The open accounts appearing on the books of the wholesale merchant are and have always been kept in Louisville. That city is the domicile of the creditor, and the debts were payable there.

The situs of the debts due by the garnishees was clearly in Louisville. Their owner has not dealt with them so as to locate them in Mississippi. It was said by this court, Cooper, C. J., delivering the opinion, in *Jahier* v. *Rascoe*, 62 Miss., 699: "It would be an unwarrantable construction to hold that debts due by residents of Mississippi to merchants conducting business in the states of Louisiana and Tennessee, contracted in the course of dealings with such merchants, were situated in this state within the meaning of the statute. . . . . The statute does not, in other cases than those in which the owner has so dealt with the property as to locate it here, abrogate the rule that choses in action have their situs at the domicile of the owner." The same general doctrine was held also in *Speed* v. *Kelly*, 59 Miss., 47. In this latter case the court held "that a debt due by a resident of this state to one domiciled in Louisiana, and having in his possession in that state the evidence of debt, was not, in the absence of any other evidence, personal property situated in this state." While these two cases went upon the proper construction of our statutes governing the

administration and distribution of personal property of de-
cedents, we are unable to perceive why the general principles
announced in both are not equally applicable to cases involving
the administration and distribution of personal property in an
assignment proceeding.    The assignment before us is valid in
Kentucky.    This is not questioned.    Is it valid in Mississippi,
and shall it be upheld here in so far as the rights of the as-
signee to the personal property in this state are affected?

It will be well to remember here that the question is, whether
a voluntary assignment of personal property (choses in action
in this instance), made in good faith will be upheld in this state,
though the conveyance was made in another state?    This is not
a case involving the consideration of the effect to be given an
insolvent or bankrupt statute of a foreign state.    The distinc-
tion between a voluntary conveyance by the owner and an invol-
untary one, or one made by operation of a statute, is univer-
sally recognized.    The latter class of conveyances have no
extra-territorial effect on property in a state other than that
where made.    As is well said in Story on Conflict of Laws,
sec. 411, "this makes a solid distinction between a voluntary
conveyance by the owner, and an involuntary legal conveyance
by mere authority of law.    The former has no relation to place:
the latter, on the contrary, has the strictest relation to place."

The well-nigh universal rule is that a voluntary assignment
which is valid where made will be upheld in another state where
some of the assigned personal property is found, unless con-
trary to the positive law or public policy of the state where
such property is found.    There is nothing on the face of this
deed of assignment in conflict with any statute of this State,
or of our public policy.    There are differences between the
Mississippi and Kentucky assignment laws as to details in
machinery in carrying into effect an assignment.    But mere
differences in administration will not produce conflict, neces-
sarily.

It is argued, however, that this conveyance in the case in

hand must be read as if it contained the provisions of the Kentucky statute, which make trust debts due by the assignor preferred debts, and declare that the intent of the assignor, whether appearing on the face of the deed of assignment or otherwise, shall not invalidate the assignment, unless the assignor be solvent. Now, as we have said, this assignment is not only good in Kentucky, but, on its face, it is good here, and it is the assignment itself which is to be upheld or destroyed by our court, and not the Kentucky assignment laws. However, when we read into this conveyance the provisions of the Kentucky statute which we have referred to, the instrument itself will declare a preference for trust debts, if there be any such, and will declare that the conveyance shall not be invalidated if there be any fraudulent intent on the part of the assignor. Inasmuch as the record does not disclose the existence of any trust debts due by the assignor, the effect to be given the assignment will be exactly that which would have been given it if the Kentucky statute had not been read into the deed. And so, too, as there is no hint even of any intent on the part of the assignor other than that of devoting his entire estate to the payment of his debts, the effect to be given the assignment in our courts will be exactly that which would have been given it if the provisions of the Kentucky statute had not been read in it. It is thus apparent that looking at the deed alone, or looking at it with the inoperative and ineffectual provisions read into it, that it is not a contravention of the law or public policy of this state. We are not to be understood as holding that the Kentucky assignment law is not essentially similar to ours on the same subject. We have not found it necessary to determine that question in this controversy. We are of opinion that the right to collect and have the sums due from the garnishees is in John M. Byers, the assignee.

*The decree of the court below will be reversed, and the bill of complainants dismissed.*