THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* DAN KLEIN and Others, Defendants.

County Court, Kings County, May 13, 1936.

*William F. X. Geoghan, District Attorney* [*Anthony J. Digiovanna, Assistant District Attorney,* of counsel], for the plaintiff.

*Joseph G. Glass,* for the defendant Dan Klein.

*Samuel A. Neuberger*, for the defendant Sidney Morris.

*Abraham Unger*, for the defendants Jack Small and Joseph Dazzo.

TAYLOR, J. This case involves substantial rights and requires decision. I have decided the question in another case, where the statute was interpreted by somebody in the district attorney's office as requiring an indictment which simply names the crime without mentioning time, place or manner.

It is impossible to know from this indictment of what the defendants or any of them are accused. The defendants may have rioted at some other time or times. They are entitled to know what they are required to defend by reading the indictment.

This indictment fails to allege under which of the three subdivisions of section 2091 of the Penal Law the alleged crime was committed.

In *People* v. *Brown* (193 App. Div. 203) all three subdivisions were characterized by the Fourth Department, Appellate Division (opinion by LAMBERT, J.), as " felonies "— this being upon the ground that each is alleged to carry a State's prison term, though subdivision 3 carries but one year, which unless punishable in the State prison would be merely a misdemeanor. In section 2091, however, the place of imprisonment is not specified. If there is any doubt as to what subdivision 3 applies to — felony or misdemeanor — the simple rule applies, that the defendant is entitled to the benefit of the doubt and to have subdivision 3 construed as charging a misdemeanor.

Under this form of indictment it is impossible to tell whether the crime charged is a felony or simply a misdemeanor.

The question of the sufficiency of this form of indictment was discussed by Judge BONYNGE of this department on a demurrer, a timely method of questioning the sufficiency of an indictment. This was two years after the short form indictment statute went into effect. The case was *People* v. *Meehan* (142 Misc. 605). There the indictment read " conspiracy to commit a crime, contrary to Penal Law, section 580, subdivision 1." The demurrer was sustained. The opinion says: " Of what offense do the defendants stand accused? Did they contemplate an affair with a neighbor's wife * * * or did they pass a stoplight or swing wide at a turn * * * or did they unwittingly disturb a funeral * * * or is their alleged wrongdoing buried in some musty and well-nigh forgotten statute? A form of indictment better contrived to trap the unwary or even baffle the initiated could not well be pictured. The word simplified scarcely does it justice. It might

with more reason be denominated a cubist indictment, since, like the paintings of that cult, it is devoid of both form and meaning. Such an indictment possesses dangerous potentialities of chicane and fraud. The grand jury which returned it has now dispersed. Assume, for example, that the evidence submitted to it tended to show that these defendants conspired to commit a robbery or some other grave felony. The minutes of its proceedings are held inviolate, and an inspection of them is permitted only in rare instances. If it should be that the prosecuting attorney was a zealot or a crusader motivated by his abhorrence to some particular offense, it would be entirely within his power to serve a bill of particulars, if one were demanded, bearing not the slightest resemblance to the facts considered by the grand jury." And, may I interpolate here, without any power on the part of the defendant to find out if that is the crime for which the grand jury intended to indict. The opinion continues: " Thus the defendants would be tried and possibly convicted of an offense for which they were never indicted. The liberty of the individual is entirely too precious a possession to be placed in any such jeopardy." The opinion then goes on and distinguishes *People* v. *Tavormina* (257 N. Y. 84) and *People* v. *Bogdanoff* (254 id. 16). In the latter, Judge CRANE wrote a strong dissenting opinion. I will come to that later.

The *Bogdanoff* case was murder. This form of indictment was used but no objection to it was raised in timely manner. The question was raised for the first time in the Court of Appeals and was decided by a divided court. It is plain, upon reading the prevailing opinion by Judge LEHMAN, that this was intended as a practical decision for the purpose of sustaining a conviction in a case where the defendant was not actually misled, where the evidence was conclusive as to the defendant's guilt, and where the defense of double jeopardy might be successfully urged on a superseding indictment.

In the *Meehan* case, Judge BONYNGE calls attention to the fact that in the *Bogdanoff* case " Judge LEHMAN cautiously observed that, although the judgment of conviction was being affirmed, this ' may not be regarded as a judicial approval of the form of indictment used.' "

It is plain that under this form of indictment there is no possible way, if the defendant be subsequently indicted and tried for the same crime, to tell by an examination of the records of the court whether or not there had been prior jeopardy. It is impossible to tell if what the grand jury intended to charge the defendants with was within or without the Statute of Limitations. And it is impossible to tell by a bill of particulars what the grand jury intended

to charge the defendants with, because the district attorney cannot be made spokesman for what occurs in the secrecy of the grand jury room. Any holding to that effect would be plainly unconstitutional, because the Constitution provides that nobody may be held to answer for a felony unless upon indictment and presentment of a grand jury. That does not mean supplemented or substituted by something from a district attorney's office.

In the *Bogdanoff* case are found a number of expressions which clearly show that the substantial rights of a defendant are involved in the form of an indictment, and he is entitled to stand pat upon that form in being advised as to what he is charged with and what he is prepared to meet.

On page 23 of the report of that case we find: " In New York and other jurisdictions it has been noted that the courts, acting under command of the Legislature, measure the sufficiency of indictments solely in relation to the substantial rights of the accused, guaranteed either by the express language or the fair intendment of the Constitution. Even so, the present indictment is certainly not sufficient if measured by any test heretofore applied by the courts of this State, or, indeed, of any other jurisdiction."

The Massachusetts bill of rights, which may be regarded as fairly interpretive of what the common law was intended to cover ever since the adoption of the British bill of rights, provides that no subject shall be held to answer for any crime or offense until same is fully and plainly, substantially and formally described to him. And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities or privileges, or deprived of his liberty or estate but by the judgment of his peers or the law of the land.

The first part of this simply shows my notion of what are the elementary, essential and substantial ingredients of an indictment.

The lower part of page 25 says: " Courts and text-book writers have in the past upheld the rule that an indictment must contain not only a certain description of the crime charged, but also ' *a statement of the facts* by which it is constituted, so as to identify the accusation, lest the grand jury shall find a bill for one offense and the defendant be put upon his trial in chief for another, without any authority.' "

And at the lower part of page 31: " The new forms may at times prove unwise. Doubtless if district attorneys insist upon using the form employed here, they will at times be unable to meet a challenge to the sufficiency of the description of a crime. Extraneous evidence may still leave uncertain at times whether an indictment for ' murder ' or ' larceny ' covers one crime or several.

The evidence presented to the grand jury might cover several connected homicides or a series of defalcations with nothing to demonstrate which crime of the series was intended to be the subject of the charge. Then the courts will be compelled to discharge the accused. Too often the courts are called upon to point out that innovation does not necessarily imply improvement."

Now, if we take a case, which is quite illustrative, of defalcation, usually the indictment covers a specific allegation; there may be a great many. But if a larceny indictment simply charges that the grand jury accuses the defendant of the crime of larceny committed in this county, must he be put to the burden of finding out from the district attorney what the district attorney sees fit to represent was in the mind of the grand jury? It would seem not.

On page 32 we find: " With equal ease and with greater certainty the District Attorney might have used, if he had chosen, a more precise form of indictment not subject to any possible claim that the indictment did not describe the same crime covered by the bill of particulars. There must in every case be identity of accusation, and the indictment must describe [describe, not name] the crime upon which the accused is held. It is the duty of the District Attorney to formulate that description with such precision that it cannot be successfully challenged. *Our decision that in this case the conviction must be sustained where no claim is made that the charge in the indictment of murder in the first degree could have been understood to have any meaning other than a charge of the murder of Ferdinand Fechter, may not be regarded as a judicial approval of the form of indictment used.* Whatever form is used, an indictment must still remain a written accusation of a crime by the grand jury. Reasonably precise formulation should render it unnecessary to resort to extraneous proof, yet a faulty formulation of an indictment cannot require a reversal of a conviction unless there is doubt as to the meaning of the indictment."

That does not mean that the court must interpret, in determining the question of doubt, what is in the mind of any individual or group of individuals. It means a record doubt — so that anybody may pick up an indictment and say, " I don't know what the accusation is."

It is, therefore, plain that in the *Bogdanoff* case there was no general approval of this form of indictment inasmuch as the prevailing opinion specifically asserts and reiterates that it is not to be regarded as authoritative or as an approval of the form. This, as supplemented by the dissenting opinion by Judge CRANE, causes this court to follow the *Meehan* case, and grant this motion.

On the question of resubmission, we are on the same horn of the dilemma — that is, the indictment does not identify the alleged offense. Notwithstanding the swearing of the jury there is arguable basis for the contention that there has been no jeopardy. Therefore, the district attorney may submit an order if he sees fit to resubmit this case to the current grand jury. Indictment dismissed.