THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES C. GIBBS, PLAINTIFF IN ERROR.

Argued May 7, 1946—Decided July 22, 1946.

Before CASE, CHIEF JUSTICE, and Justice HEHER.

For the State of New Jersey, *Saul N. Schechter,* Prosecutor of the Pleas of the County of Warren.

For the plaintiff in error, *Frank G. Schlosser, Harry Runyon* and *Peter Friedman.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. The plaintiff in error was found guilty of advocating the death of his wife in violation of sub-

division (a) of *R. S.* 2:138–8. The statutory provision follows:

"2:138–8. Advocating or threatening to take life.

"Any person who shall, in public or private, by speech, writing, printing or drawing, or by any other method:

"a. Advocate the death of any person; or

"b. Threaten to take or procure the taking of the life of any person—

"Shall be guilty of a high misdemeanor, and punished by fine not exceeding five thousand dollars, or imprisonment at hard labor not exceeding fifteen years, or both."

The first and second points argued by the plaintiff in error are related. They are: First, that the statute upon which the indictment, conviction and sentence were based is so vague, indefinite and uncertain in its terms as to violate the due process of law clause of the Fourteenth amendment to the Constitution of the United States; second, that the indictment does not inform the accused of the nature and cause of the accusation as required by paragraph 8, article I of the state constitution.

The rule applicable to the first point is thus stated in *Connally* v. *General Construction Co.*, 269 *U. S.* 391; 70 *L. Ed.* 322:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

See, also, *State* v. *Klapprott,* 127 *N. J. L.* 395, and *Lanzetta* v. *New Jersey,* 306 *U. S.* 451; 83 *L. Ed.* 888. We think, however, that the statute is not subject to the criticism expressed in the first point.

The verb "advocate" is in common use. Webster's New International Dictionary has defined it as to "plead in favor of." The reasoning of this court in *State* v. *Gabriel,* 95 *N. J.*

*L.* 337, is to the same effect; and in *State* v. *Quinlan,* 86 *Id.* 120 (*affirmed,* 87 *Id.* 333) this court said of a collocation of words of which "advocate" was one—"There is no organic law or rule of sound public policy that requires the legislature to define the meaning of English words in common and daily use."

It is clear that the death referred to in the statute is a felonious or homicidal death. The statute was first enacted as chapter 45, *Pamph. L.* 1908, a supplement to the general act for the punishment of crimes. It contained the marginal side line "Penalty for threatening to take life" applicable to the éntire statute. The statutory provision was:

"Any person who shall, in public or private, advocate, by speech, writing, printing, drawing, or by any other method, the death of any person, or who shall, in public or private, by speech, writing, printing, drawing, or by any other method, threaten to take or to procure the taking of the life of any person, shall be guilty of a high misdemeanor, and punished by imprisonment at hard labor for a term of not exceeding fifteen years or by a fine not exceeding five thousand dollars, or both, at the discretion of the court."

The statute was reprinted in the same language in the Compiled Statutes of 1910 as plac. 111a and was given the blackface type headline "Advocating the taking of or threatening to take or procure the taking of human life; punishment." It was there assembled, along with murder, manslaughter, killing by misadventure, poisoning or attempts to poison, and the like, under the title of "Crimes which involve private injury to the persons of individuals." We attach no significance to the marginal notation in the publication of the 1908 Pamphlet Laws because that was merely a publisher's addition; and we would give little importance to the placement in the Compiled Statutes—the work of the editors of that compilation—were it not for the fact that the same arrangement and classification are preserved in the Revised Statutes of 1937 which were the enactment of the legislature. The presumption is against the existence of a legislative intent to effect, by a general revision of the laws, a change in the substance of a statute, *Crater* v. *County of Somerset,* 123 *N. J. L.*

407, and we consider that the legislature did not intend to effect a change in the substance of this statute; but we are bound to give force to the fact that the legislature preserved and ratified that classification in the accepted revision and incorporated the provision within the chapter entitled "Homicide." Further, the intimate connection between present clauses "a" and "b," emphasized and clarified by the yet closer integration of the original statute of which the present is a restatement, is persuasive that the "death" referred to is death consequent upon the taking of life. We conclude that the prohibition of the statute is against the advocacy of a homicidal death.

The matter raised in the second point was appropriately preserved for appeal by proper motions and exceptions. The general rule is that in an indictment for an offense created by statute it is sufficient to describe the offense in the words in which the statute describes it; but this rule is based upon and applies only to those cases in which the statute describes the offense with which it has to do. Unless this is so the mere recital of non-descriptive words from the statute will not constitute, in reasonable completeness, a statement of the offense so as to relieve the pleader from averring all facts that go to make it up. *State* v. *Schmid,* 57 *N. J. L.* 625; *State* v. *Spear,* 63 *Id.* 179; *State* v. *Allgor,* 78 *Id.* 313; *State* v. *Borg,* 9 *N. J. Mis. R.* 59; *State* v. *Bradway,* 118 *N. J. L.* 17.

The indictment was short. It follows:

. "The Grand Inquest for the State of New Jersey, and for the body of the County of Warren upon their respective oaths Present, That James C. Gibbs late of the Township of Frelinghuysen in the said County of Warren, on the Fourth day of September in the year of our Lord Nineteen Hundred and Forty-five at the Township aforesaid, in the county aforesaid, and within the jurisdiction of this Court, did then and there in private, by speech, advocate with certain persons, to wit, Frank Whittman and Albert E. Green, the death of May Gibbs, the wife of the aforesaid James C. Gibbs, contrary to the form of the statute in such case made and provided, and against the peace of this State, the Government, and dignity of the same."

It is not alleged that the accused advocated the death of his wife by unlawful means, or that her life should be taken by Whittman or by Green or by anyone else. There is nothing in the indictment that charges the advocacy of a homicidal death. We have found that the statute is saved by the character of the death with which it is concerned, namely, a homicidal death; but the homicidal element, while necessary to the crime, is not specifically stated in the statutory definition. Consequently, an indictment which uses merely the words of the statutory prohibition and fails to include the homicidal aspect of the advocated death does not state a crime. Most deaths are not homicidal. And not all advocacies of death are criminal. Illustrations of the latter proposition come readily to mind, as the fervently expressed wish that death may come to an agonized sufferer in the grip of an incurable disease; or the expressed opinion that one accused of murder should be visited with the death penalty. We consider that the homicidal aspect of the death is an essential element of the crime and as the indictment is completely silent thereon it does not, in our opinion, meet the requirements of paragraphs 8 and 9 of article 1 of our state constitution. An indictment should adequately inform the accused of the nature of the crime charged against him. *State* v. *Tilton,* 104 *N. J. L.* 268, 274. It certainly should set out a crime. It is not the function of a bill of particulars to remedy defects in indictments or to supply essential averments omitted and necessary to charge an indictable offense. *State* v. *Freulli,* 98 *Id.* 395, 401.

Other points are presented but need not be considered.

The judgment below will be reversed, for the reasons stated under the second point, *supra.*