87 So.2d 523 (1956)
229 La. 1036
STATE of Louisiana
v.
James STRAUGHAN.
No. 42575.
Supreme Court of Louisiana.
March 26, 1956.
*525 Vincent Hazleton, Alexandria, for plaintiff-appellant.
Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Ben F. Thompson, Dist. Atty., A. M. D'Angelo, Asst. Dist. Atty., Alexandria, for appellee.
FOURNET, Chief Justice.
The accused, James Straughan, having been convicted and sentenced[1] on a bill of information charging that he did, within the Parish of Rapides and the jurisdiction of the Ninth Judicial District, and on or about July 22, 1954, "wilfully maliciously and feloniously commit gambling as denounced by Louisiana Revised Statutes, Title 14, Section 90," prosecutes this appeal, relying for the reversal thereof on numerous bills of exceptions reserved and perfected during the course of his trial. Inasmuch as we find merit in the second bill, reserved when the trial judge overruled his motion to quash the information, it will be unnecessary to consider the remaining bills. (Emphasis supplied.)
The motion to quash the information is levelled at its insufficiency to properly inform the accused of the offense with which he stands charged, as required by Sections 9 and 10 of Article I of the Louisiana Constitution of 1921LSA, in that it states nothing more than a conclusion of law without any facts or circumstances upon which such a conclusion could be based, and more particularly so since the crime sought to be denounced by LSA-R.S. 14:90, Article 90 of the Criminal Code,[2] is very sweeping, attempting, as it does, to be sufficiently broad to apply to all forms of organized gambling whatsoever not legalized by specific statute, the crime of gambling there being described in such vague and generic terms as games, contests, lotteries, and contrivances, with the result that a reference to the statute itself furnishes no aid in ascertaining just what acts of omission or commission of his are considered as having contravened its provisions.[3]
The state, on the other hand, contends that the information charged gambling under Article 235 of the Code of Criminal Procedure as amended by Act 223 of 1944[4] and was, therefore, valid and sufficient under the holding of this court in State v. Davis, 208 La. 954, 23 So.2d 801, which is controlling. The argument is that an indictment charging an accused by the use of the name given the crime in the Criminal Code and the number of the article in which it is there denounced must be deemed sufficient to protect his constitutional rights in view of the fact that he was fully informed of the "nature and cause" of the accusation against him in the bill of particulars furnished by the district attorney. The theory underlying this argument is that although the constitutions of the United States and of Louisiana require that an accused "be informed of the nature and cause of the *526 accusation"[5] they do not specify any particular method for conveying this information to the accused, or require that the "nature and cause" of the accusation be contained in the indictment or information on which it is stipulated he must be prosecuted; consequently, that these constitutional requirements have been amply satisfied since the nature, cause, and details of the offense here charged have been set out in full in the bill of particulars, and more particularly so since this procedure is not prohibited by the constitution.[6]
This is the identical argument advanced by the state in the McQueen case, No. 42,417 on the docket of this court, which is now pending on the state's application for a rehearing of the adverse ruling handed down December 12, 1955, awaiting the decision in the instant case. This case, incidentally, appears to be the only case in our jurisprudence that squarely considered the contention that an indictment or information referring to the crime charged by name and article number only, as authorized under the 1944 amendment to Article 235, is unconstitutional, and fundamentally defective and insufficient even though a bill of particulars is furnished since our constitutional requirements are not satisfied by the inclusion of the nature and cause of the accusation in such a bill. Although the Davis case [208 La. 954, 23 So.2d 804], involved an information drawn under the 1944 amendment to Article 235, the court there, by a four to three decision, specifically refrained from determining whether such a short form is constitutional, holding that even "if the information as originally drafted be defective in that respect, the defect was cured by the answer filed by the district attorney pursuant to defendant's motion for a bill of particulars."[7] This conclusion was reached without any consideration being given to the long line of authorities in this state that, up until that time, and since, have held, as does the overwhelming majority of opinion throughout the country, that a bill of particulars forms no part of an indictment or information and can in no way aid or render sufficient one that is fundamentally bad.[8] Instead, reliance is *527 placed on language in State v. Miller, 170 La. 51, 127 So. 261, and State v. Brooks, 173 La. 9, 136 So. 71, that is not only obiter, but not sustained by any cited authority. Furthermore, neither of these cases is authority for such a holding. The crime charged in the Miller case was theft and in the Brooks case embezzlement, and the forms used in both cases were those specifically set forth in Article 235 before its amendment in 1944. The court found the indictment as drawn in the Miller case contained sufficient facts to be good, while in the Brooks case the question presented for decision was whether a motion to quash an indictment, filed after arraignment, on the day of trial, came too late, the court carefully pointing out that the question of the sufficiency of the indictment was not then before the court.[9] (Emphasis supplied.)
Other than the Davis case, none of the authorities relied on by the state involved the short form authorized by the 1944 amendment. The Pete, Chanet, Nichols, Holmes, and Roy (from New Mexico) cases involved certain well known crimes charged in the short forms specifically set out in Article 235 before its amendment, i. e., theft, aggravated rape, manslaughter, simple burglary, and murder, respectively. Furthermore, a mere reading of the charge in the indictment or informations in these cases will disclose convincingly that they met the generally accepted test for constitutional sufficiency, i. e., (1) they were sufficient to inform the court of the exact offense being charged so that the court could properly regulate the evidence sought to be introduced, (2) they informed the accused of the nature and cause of the offense charged so that he could properly prepare his defense, and (3) they were sufficient on their face to support a plea for former jeopardy in the event of a subsequent attempt to try the defendant for the same offense. See State v. Ward, 208 La. 56, 22 So.2d 740, and the recent case of State v. Scheuering, 226 La. 660, 76 So.2d 921. For example, in the Pete case the information charged that "Hampton Pete, at the parish of Calcasieu, on or about the 7th day of April in year of our Lord One Thousand Nine Hundred and Forty-four (1944) did unlawfully commit the theft of an automobile, of the value of Twelve Hundred and no/100 ($1200.00) Dollars, the property of Gordons Drug Store, Inc., a corporation."
We thought our decision in the McQueen case had made the position of this court amply clear. However, in view of the three dissents therein, the state's urgent request for reconsideration of that decision, the reiteration of the identical argument in the instant case, and also in order that all interested parties may be assured of a reasonable measure of certainty as to the type of criminal charge permissible under the organic law of this state, we have held this appeal under advisement for several terms of court in order that we might make an exhaustive research into the matter of the so-called short form of criminal charge and the proper function of bills of particulars in criminal cases under our constitutional form of government, so that we may set at rest, in so far as Louisiana is concerned, the controversy that has apparently raged in this country ever since the American Law Institute released in June of 1930 its draft of a proposed model Code of Criminal Procedure *528 on which code a few of the states have patterned their procedural criminal law in the belief it would "provide an effective administration of the criminal law with adequate protection to the substantial rights of the accused." This exhaustive research has convinced us of the profound truth reflected in the statement of the reluctant majority in the landmark decision of People v. Bogdanoff, 254 N.Y. 16, 17, 171 N.E. 890, 895, 69 A.L.R. 1378, decided in 1930, that "The new forms may at times prove unwise * * *. Too often the courts are called upon to point out that innovation does not necessarily imply improvement." (Emphasis supplied.)
Needless to say, we have found that the decisions in all states turn, of necessity, upon their peculiar constitutional and statutory provisions as applied to the particular form of charge in, and the facts of, the case under consideration. In this state also these are controlling, irregardless of views expressed by other courts, and also irregardless what some think the law ought to be or wish it might be. It may well be that the legislature, unrestricted or constitutional provisions, can, as in some few states,[10] prescribe any change at will, all details connected with the prosecution of one charged with the commission or omission of acts denounced as crimes in the substantive law of the state, i. e., the entire process of levying the formal charge against the alleged offender, of notifying him of the charge, of exhibiting the charge before a legal tribunal and of pursuing it to the final judgment of acquittal or conviction. However, there can be no question but that the constitutional provisions of the state are supreme, transcending any legislative enactmentor judicial pronouncement or executive act for that matterand that in prescribing the form of charge and the procedure in criminal cases a legislature can never, either directly or indirectly, endanger any of the safeguards and protections with which the rights of the individual have been surrounded in that instrument, or, by circumvention, in any manner trench upon its guarantees. To this end, it is the duty of the court to interpret legislative enactments and to decide cases in the light of these guarantees, and it may not, in the name of expediency or in the wake of changing modern trends, permit the legislative body to unlawfully override the mandates of the constitution where these are plain and unambiguous.
From the foregoing it is obvious that the crucial question squarely presented for determination in this case is whether our constitutional guarantee that "in all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him",[11] and the mandatory provision to be found in the constitution that all criminal prosecutions "be by indictment or information",[12] are satisfied by the procedure authorized under the 1944 amendment to Article 235 of the Code of Criminal Procedure which permits the state in criminal prosecutions to charge the defendant, either in indictment or information, "by using the name and article number of the offense committed" as set out in the Criminal Code.[13] Another constitutional provision that must be taken into consideration is the guarantee that no person shall "be twice put in jeopardy of life or liberty for the same *529 offense." Section 9 of Article I of the Louisiana Constitution of 1921. In the event we find such a charge is not sufficient, then we must determine whether the bill of particulars furnished by the district attorney under the discretionary powers of the court cures such a defect.
Our careful and extensive consideration of this entire subject, particularly viewed in the perspective of its historical background, convinces us that such a procedure is not only an innovation posing a potential danger to the right of an individual to life and liberty, without which he cannot be deprived "except by due process of law,"[14] but also that our constitution, as it is written and adopted, permits no such experimentation with the law as the legislature has here attempted, for though the legislature may change the form of an information and indictment, it cannot change the substance of their material averments without infringing upon constitutional guarantees.
These constitutional provisions are not meaningless tautology. Instead, they form one of the principal cornerstones of our Bill of Rights. Furthermore, the indictment and information are universally recognized to be the very groundwork upon which the whole superstructure of a prosecution for the commission of an offense is predicated. They have, in the common law of England, always meant that an accused can be prosecuted only by an indictment or information (with the exceptions noted in Footnote No. 13), in which document he is to be informed of the nature and cause of the accusation against him. Indeed, these provisions were recognized by the research staff of the American Law Institute studying the constitutional provisions of the various states preparatory to the drafting of its proposed model criminal procedural code, to be but a crystallization of the common-law rule "requiring the charge to be set out with precision and fullness, so that defendant may make his defense and avail himself of his conviction or acquittal in a subsequent prosecution for the same offense."[15]
The requirement that the prosecution "shall be by indictment or information" has been included in all eight constitutions that have formed the organic law of this state,[16] beginning with the first one drafted and adopted in 1812 under Congressional authorization so that the Territory of Orleans might be admitted into the family of states under a stable form of government. In the Constitution of 1812, the right of the accused to "demand" the nature and cause of the accusation against him was recognized, and although this provision, during the unrest immediately preceding and following Louisiana's secession from the Union, was omitted, it reappeared in the Constitution of 1879, and has, since that time, guaranteed that in all prosecutions the accused "shall be informed of the nature and cause of the *530 accusation against him." (Emphasis supplied.)
These guarantees as thus phrased in our organic law are to be found in the constitution of no other state. The majority of the state constitutions[17] guarantee only that the accused has the right to "demand" the nature and cause of the accusation.[18] Eight state constitutions contain no guarantee the accused will be either "informed" of the nature and cause of the accusation against him, or that he can "demand" such information.[19] Only eleven states, including Louisiana, guarantee that an accused will be "informed" of the nature and/or cause of the accusation. Of these, Michigan and Minnesota have no constitutional provision for the method of prosecution; Arkansas, Delaware, New Jersey, North Carolina, and South Carolina require, generally, that all crimes above the level of a misdemeanor be prosecuted on indictment or presentment of a grand jury; Oklahoma requires that all crimes be charged by the grand jury, permitting the use of the information only where there has been full hearing before a committing magistrate; while New York and Rhode Island provide that capital and infamous cases will be prosecuted by indictment or presentment.
Significantly, of the ten states other than Louisiana guaranteeing an accused will be informed of the nature and cause of the accusation, only New York and Rhode Island have adopted by legislative act a proceeding authorizing the charging of crimes by statutory number or common-law designation. The Rhode Island statute, adopted in 1932, C.1954, Sec. 1, CI. 5, has never undergone the test of constitutionality in the courts so far as we can determine, the decided cases involving only the specific short forms,[20] and while the New York statute was upheld as constitutional in People v. Bogdanoff, 254 N.Y. 16, 171 N.E. 890, 69 A.L.R. 1378, where the accused was charged by indictment with murder, this holding was not only a four to three decision, but has been so narrowed in subsequent decisions where the reason for the ruling was explained, it has, for all intents and purposes, been repudiated.[21] Additionally, *531 it should be emphasized that although the New York constitution at the time contained no guarantee the accused would be informed of the nature and cause of the accusation, this guarantee was, in 1938, made a part of the New York constitution by amendment.
Actually, only five states other than Louisiana, New York, and Rhode Island authorize the charging of a crime by commonlaw name or statutory number, i. e., Arizona, Iowa, Utah, and Wisconsin by legislative enactment, and New Mexico by court rule.[22] Indeed, few of the other states even go so far as to approve the use of the specific forms for well-known common-law crimes such as were permitted by Article 235 of the Louisiana Code of Criminal Procedure prior to the 1944 amendment, i. e., Alabama, Florida, Michigan, and Ohio.[23] In all of these states, Michigan excepted, the constitution guarantees only that the accused has the right to "demand" the nature and cause of accusation. Furthermore, the constitutions of Arizona, New Mexico, and Utah (where the number and name charge is permissible) authorize a criminal charge by information only after preliminary examination before a committing magistrate, where the accused is fully informed of the evidence in the hands of the prosecutor upon which the charge is predicated, while Iowa requires that all crimes above the level of misdemeanors be by grand jury action, and, further, gives the accused access to the testimony of all witnesses and proceedings before the grand jury.[24] The constitutions of Michigan and Wisconsin alone leave the matter of the form of criminal *532 charge and the mode of prosecution in the hands of the legislature.
In many of these states, the constitutionality of these forms has never been tested or even challenged in the courts.[25] The remainder of the states, and by far the over-whelming majority, have specific statutory requirements that the indictment or information contain a statement of the facts or acts upon which the charge is predicated, or else that the charge be in plain, concise language that is easily understandable, direct, and certain.[26]
The legislature of Louisiana, being fully cognizant of the meaning of the provisions of our constitution guaranteeing to an accused that he would be informed of the nature and cause of the accusation and prosecuted by indictment or information only, included in the Code of Criminal Procedure adopted in 1928, as no idle gesture, the provision that "The indictment must state every fact and circumstance necessary to constitute the offense * * *." Article 227, R.S. 15:227. (The word indictment as used in the code includes also the information and affidavit charge. See, Article 216 R.S. 15:216.) This enactment has never been repealed.[27] (The emphasis has been supplied.)
The states providing that the criminal charge may be made by name and statute number only have, unquestionably, patterned their legislation upon the procedure recommended by the American Law Institute in a model Code of Criminal Procedure released in 1930[28]9 years after the adoption of our Constitution of 1921 and two years after the adoption of our procedural code of criminal procedureand particularly upon Section 154 of that code which provides, in substance, that an indictment or information is valid and sufficient if it *533 charges the offense (1) by the use of the name given it at common law or by statute, (2) by so much of the definition of the offense at common law or statute as will give the court notice of the offense intended to be charged, or (3) by reference to the section or subsection of the statute creating the offense. Significantly, the Institute realized such a charge would not meet the constitutional guarantees in the various states and so, in drafting Section 155, provided that when the offense so charged fails to give the accused the information to which he is "entitled under the constitution" of the state, the court may, in its discretion, or shall upon demand of the accused, order the prosecuting attorney to furnish such information in a bill of particulars. Such a bill refers only to the charge as brought under Section 154, and while in Section 188 a number of the specific short forms for well known crimes are set out, this provision makes no reference to the use of a bill of particulars in connection therewith. (Emphasis supplied.)
There is no question but that this code, as reflected by the succeeding articles and also the proceedings at which they were discussed before final approval, intended that the indictment state "the bald offense," relegating to the bill of particulars the function of stating "just enough facts as would now make an indictment valid if they were put in the indictment." In other words, the bill of particulars, regardless of constitutional provisions, was to be used as the vehicle for charging the nature and cause of the accusation, not the indictment or information, a procedure that up until that time had never been heard of.[29] As stated by the Arizona court in State v. Benham, Ariz., 118 P.2d 91, 93, commenting on similar provisions in that state patterned on the Institute code, "In view of the simplified forms of indictments and information under the new criminal procedure, bills of particulars assume an important place in criminal trials. What was formerly essential to allege in the indictment or information may now be supplied to a defendant in a bill of particulars." See Volume VI of the proceedings of the American Law Institute, page 555, etc.
Such a procedure is not only not authorized under our basic law, it is also contrary to all concepts of the criminal charge by indictment or information that previously obtained in the several states, as well as in England, where these documents from time immemorial, were used for the purpose of properly, clearly, and plainly informing the accused of all of the facts upon which the accusation against him was founded. The so-called oversimplified procedure recommended by the Institute therefore substituted for the criminal charge under the common law "notice" only of such a charge, making the indictment or information a mere process pleading without the inclusion of a single fact upon which the charge was based, thus leaving the accused in total darkness as to the acts of omission or commission constituting the basis of the accusation, and making it impossible for him to prepare for his defense unless he choose to waive, if that were permissible, all of his *534 rights under the constitution, and ask the state to inform him what acts of his constituted the charge he was called upon to face at the trial. It also called for uncertainty in the actual trial, since the charge as contained in the indictment or information only is read to the jurynot the bill of particulars, which is for the sole benefit of the accused.
The reasons advanced for such an innovation were that almost all crimes in the various states were returnable as charges only by a grand jury, and the indictment or presentment of the grand jury could not thereafter be amended; consequently, to permit the indictment or information to contain merely the name or statute number of the offense, would prevent the quashing of the indictment and the delay, trouble, and expense of seeking another charge from a subsequent grand jury.[30] However, even in those states where sanctioned, the judicial approval given such charges has usually been predicated upon the fact that the indictment or information contained facts and circumstances, not just the bare name and statute number.
Furthermore, the provisions have not proved to be successful, and the experience is that they have delayed, rather than speeded up, justice. As above pointed out, in Footnotes Nos. 20-25, the current trend is away from these simplified forms, both in legislative and judicial action. Many of the states have no provision for, and do not recognize, the use of bills of particulars in criminal proceedings.[31] In almost all of the states, including Louisiana,[32] the furnishing of such a bill is not mandatory, but discretionary with the trial judge, and his discretion is never overruled except in instances of gross abuse. It is almost universally held that a bill of particulars forms no part of an indictment or information, cannot aid or cure one that is fundamentally bad.[33] Unquestionably, in the vast majority of trials, no appeal is taken from a conviction or acquittal in the trial court. For this reason, no record is made of the trial and, under such circumstances, the simplified charge can never serve as the basis for the plea of former jeopardy in the event of a second prosecution for the same offense.
Even the specific simplified forms as provided by Article 235 prior to the 1944 *535 amendment have not proved sufficient, or been upheld in all instances. The pitfalls with which this procedure is fraught was very succinctly pointed up by the majority in People v. Bogdanoff, supra [254 N.Y. 16, 171 N.E. 895], thusly: "The new forms may at times prove unwise. Doubtless if district attorneys insist upon using the form employed here, they will at times be unable to meet a challenge to the sufficiency of the description of a crime. Extraneous evidence may still leave uncertain at times whether an indictment for `murder' or `larceny' covers one crime or several. The evidence presented to the grand jury might cover several connected homicides or a series of defalcations with nothing to demonstrate which crime of the series was intended to be the subject of the charge. * * * There must in every case be identity of accusation, and the indictment must describe the crime upon which the accused is held. It is the duty of the district attorney to formulate that description with such precision that it cannot be successfully challenged." (Emphasis supplied.)
Commentators, as well as advocates of the specific and oversimplified short form authorized by Article 235 as amended, are compelled to admit that the relegation of the criminal charge to the bill of particulars has not proved successful or time-saving. They are frank to advocate now the incorporation of a more particularized statement of the facts in these short forms, stating, as Dr. Dale E. Bennett of the L. S. U. School of Law puts it, that this "enables the district attorney to avoid the delays necessarily incidental to the filing of a bill of particulars, by stating the details of the crime in the original indictment", 6 Louisiana Law Review 17, and, as Dr. Clarence J. Morrow of the Tulane University School of Law states, as "a practical matter * * * a wise prosecuting attorney will anticipate the probability of being required to file a bill of particulars, and will include more details in his charge at the outset", 19 Tulane Law Review 489, or, as phrased at 20 Tulane Law Review 233, "As a matter of practice cautious prosecuting attorneys will include more specific facts regarding the offense charged, and if the crime is one which may be committed in two or more separate ways, the indictment will state which of the alternate offenses as defined in the Criminal Code is intended." These comments reflect the realization that the bill of particulars cannot, in law or practice, fulfill the function originally thought at the time of the adoption of the short forms authorized in Article 235, either before or after the 1944 amendment. For an excellent example of the failure of a charge to correctly specify the offense when it may be committed in several ways, see the recent decision of Alabama in Gayden v. State, 262 Ala. 468, 80 So.2d 501. (Emphasis supplied.)
Most of the decisions and comments making the broad statement that the simplified criminal form has been upheld as constitutional cite those cases dealing with the specific short forms used in charging well-known common-law crimes, such as murder and rape, rather than the oversimplified form authorized under the 1944 amendment, where the crime may be charged by name and number. Yet even these specific simplified forms have proved to be unsatisfactory from both a legal and practical standpoint. The result of this innovation is discussed at length in a book entitled the "Administration of Criminal Law," by Professor Ernst W. Puttkammer of the University of Chicago School of Law, just recently released, from which the following is quoted:
"By far the most extreme example of simplification * * * is represented by the so-called `short-form' statutes. Typically such a statute will set forth certain forms for various crimes, declaring them to be adequate. Thus in a murder charge the indictment form may merely state that on a specified day at a specified place the defendant murdered a specified person. All factual details are left for specification in a bill of particulars. This, of course, constitutes the ultimate in simplification. It is a safe statement that the short-form innovation has not proved a success and has been little used even in those states where there are such statutes. Their constitutionality is at least doubtful on twin grounds that they do not supply the defendant with the facts charged against him and that so abbreviated *536 a document no longer constitutes an `indictment' by a grand jury. There are also serious practical disadvantages. Thus one very obvious danger is that it makes the drafting of an indictment so simple a process, and so easy a one, that it may lead to the slipshod procedure of a prosecuting attorney's asking a subservient grand jury to vote an indictment first and carrying on his investigation later. Plainly, this is a real and serious danger, since the mere fact that an indictment has been found against a person is likely to do almost as much harm to his reputation as a conviction. To require at least some information of specific facts not only lessens this danger; it jacks up the efficiency of the prosecutor's office before, rather than after, it is too late." (Emphasis supplied.)
There is no principle of procedural due process in criminal cases more clearly established than that the specific charge, and the chance to be heard in a trial on the issues as raised in the specific charge to be found in the indictment or information, if desired, are among the constitutional rights of every accused in all courts. An intelligent and full understanding by the accused of the charge against him is the first requisite of due process. Without prosecution on the indictment or information, our judicial tribunals are powerless to proceed, for these documents form the very foundation of their jurisdiction. The nature and cause of the accusation requirement, as found in the constitution, must also be determined in the sense in which it was used in the common law at the time of its adoption. These mandates may not be subverted or overthrown by indirect legislative action, or written out of the constitution by judicial pronouncement on the assumption they have been superseded as antiquated and obsolete. Neither the judiciary nor the legislature is authorized to extend or contract the meaning of these constitutional provisions beyond that of the common law, and where it is provided by the constitution that a person shall not be called to answer for any criminal offense except on indictment or information, and particularly where the constitution provides that "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him", such provisions place it beyond the power of the legislature to dispense with the statement in this document, as universally understood, that all of the essential facts necessary to describe the nature and cause of the offense must be incorporated in the initial criminal charge, which must be by indictment or information, with the above noted exceptions.
So far as we can determine, never before the appearance of the proposed model code by the American Law Institute had there been any suggestion that the accused be informed of the nature and cause of the accusation against him other than in an indictment or information, and it was universally understood that these provisions were but the expression of the fundamental principle that inspired all civilized men in forming a government to include therein the provision that was to protect the individual from the action of arbitrary officialdom in working out his destiny where his life, liberty, and property were affected. And regardless of some ill-considered, loose expressions in a few cases, the law is and has always been that it is not enough to charge against a defendant a mere legal conclusion as justly inferential from facts that are not set out in the criminal indictment or information. Every criminal charge under the common law of England, upon which the criminal law of this state was based, was a compound of law and fact. Blackstone, the great English authority, as long ago as 1769, stated an indictment is a written accusation which must have a "precise and sufficient certainty," the offense itself therein being "set forth with clearness and certainty." Lord Hale defined an indictment as "nothing else but a plain, brief, and certain narrative of an offense committed by any person, and those necessary circumstances that concur to ascertain the facts and its nature."
In United States v. Potter, C.C., 56 F. 83, 89, it is very aptly pointed out that "In order to properly inform the accused of the `nature and cause of the accusation,' *537 within the meaning of the constitution and the rules of the common law, a little thought will make it plain, not only to the legal, but to all other educated, minds, that not only must all the elements of the offense be stated in the indictment, but that also they must be stated with clearness and certainty, and with a sufficient degree of particularity to identify the transaction to which the indictment relates as to place, persons, things, and other details. The accused must receive sufficient information to enable him to reasonably understand, not only the nature of the offense, but the particular act or acts touching which he must be prepared with his proof; and when his liberty, and perhaps his life, are at stake, he is not to be left scantily informed as to cause him to rest his defense upon the hypothesis that he is charged with a certain act or series of acts, with the hazard of being surprised by proofs on the part of the prosecution of an entirely different act or series of acts, at least so far as such surprise can be avoided by reasonable particularity and fullness of description of the alleged offense." See, also, in addition to the authorities discussed in the Vernado, Pettifield, and McQueen cases, supra, 1 Alexander Law of Arrest, 274, etc.; Clements Criminal Procedure, pages 78 and 740; II Bishop on Criminal Procedure, Sections 517, etc.; 30 Journal of the American Institute of Criminal Law and Criminology', 135, 888; 37 Mich.L.Review 1325; 47 West Virginia Law Review 336; People ex rel. Battista v. Christian, 249 N.Y. 314, 164 N.E. 111, 61 A.L.R. 793; State v. Greer, 238 N.C. 325, 77 S.E.2d 917, 918; and State v. Jessup, 98 Utah 482, 100 P.2d 969.
These requirements for certainty in the charge of the facts and acts upon which the accusation is based are grounded in sound reason. Everyone is innocent in the eyes of the law until convicted, and should be given full and fair notice of what is charged against him so that he may have every chance to properly defend himself. He can only know what appears in the initial charge, and for this reason that instrument must allege every fact material to the proceeding. The purpose of this written accusation is (1) to inform him fully and clearly of the crime charged against him; (2) to inform the court of such charge so that it may determine whether the facts alleged constitute the crime and will sustain a conviction thereof, and justify proceeding to trial; (3) to enable the defendant to prepare his defense against such charge, and to take any appropriate proceedings prior to his trial, such as the filing of a motion to quash for insufficiency; and (4) to enable him to plead a judgment rendered against him, either of acquittal or conviction, in bar of a subsequent prosecution for the same crime charged, or for which he was formerly tried.
The constitutional guarantee of due process of law does not mean a procedure that endangers the innocent. It means a procedure that preserves those enduring principles enunciated in our Bill of Rights, and the preservation of those basic rights termed as inalienable in our Declaration of Independence. This procedure can alone insure the security of the innocent, and even of the guilty, until he has been so adjudged by a jury of his peers. We cannot, therefore, under these guarantees, follow the holdings of those few states that feel their constitutional provisions permit defects in the initial criminal charge to be overlooked if the record as a whole shows the substantial, as contradistinguished from the constitutional, rights of the accused have not been prejudiced. Nor can we, under constitutional mandate, sanction legislative action that transcends these fundamental constitutional provisions and permits prosecution by a bill of particulars, rather than by an indictment or information.
We concede that many of the meaningless subtilities and technicalities and prolixities that abounded in England prior to the Revolution of 1688 in charging crimes have no place in modern law, but such a concession is not new in Louisiana, nor is a simple form of criminal charge free of this ponderous language and phrasing. The very first statutes adopted in Louisiana in 1805 provided that "the forms of indictment, divested however of unnecessary prolixity, changing what ought to be changed, shall be * * * according to the common law." *538 Thus long before any other state, we recognized that the rigors and formalities of the common-law rules of criminal pleading could give way to simplicity and terseness of statement and still remain a valid charge, and while all of the holdings of this court since that time reveal it has never been our intention to hamper this trend so long as constitutional requirements are met, they also reveal it was never the intention of the judiciary of this state to permit a criminal charge to be so condensed and restricted as to eliminate those essentials that are the citizen's only security against the exercise of arbitrary power.
Accordingly, Section 1 of Act 223 of 1944, amending Article 235 of the Code of Criminal Procedure of 1928 (now LSA-R.S. 15:235), in so far as it provides that "it shall be sufficient to charge the defendant by using the name and article number of the offense committed", as defined in the Criminal Code, is declared to be null and void, and of no effect; consequently, the information in the instant case is fatally defective. Of necessity, we must, and we do, specifically overrule the holding in State v. Davis, 208 La. 954, 23 So.2d 801.
For the reasons assigned, the judgment of conviction and sentence is annulled and set aside; the motion to quash is maintained; and the accused is ordered discharged.
HAMITER, J., dissents.
HAWTHORNE, J., dissents for the reasons assigned in State v. McQueen, 230 La. 55, 87 So.2d 727.
McCALEB, Justice (dissenting).
In resolving that the short form authorized by R.S. 15:235, as amended by Act 223 of 1944, is incapable of satisfying the constitutional guarantee that an accused be informed of the nature and cause of the accusation, the majority rests its decision on two grounds. It is delared that the proviso contained in R.S. 15:235 that the prosecution may be required by the judge on request of the accused to furnish a bill of particulars setting forth the nature of the offense chargedis inadequate to afford protection to the constitutional rights of the accused for the reason that our constitutional provision, unlike that in many other states, guarantees a compliance by the State and it is not essential that the accused make demand therefor. And it is also deduced that a bill of particulars cannot fulfill the constitutional guarantee since it does not have the effect of amending a bill of indictment or information.
These views appear to be in direct conflict with the well-established jurisprudence of this Court wherein the special short forms authorized by R.S. 15:235 for use in charging certain offenses have been upheld. I find it singular that, although comprehensive and exhaustive in its consideration of the constitutional question presented, the majority opinion, while citing some of those cases, does not mention the ground on which the constitutionality of the special short forms provided by R.S. 15:235 has been consistently maintained. The rationale of those decisions is that the special short forms are not violative of the constitutional requirement that the accused be informed of the nature and cause of the accusation because he is amply protected by the provision of the statute that the district attorney may be ordered to furnish him with a bill of particulars setting forth more specifically the nature of the offense charged. See State v. Miller, 170 La. 51, 127 So. 361 (larceny); State v. Brooks, 173 La. 9, 136 So. 71 (embezzlement); State v. Pete, 206 La. 1078, 20 So.2d 368 (theft); State v. Ward, 208 La. 56, 22 So.2d 740 (negligent homicide); State v. Chanet, 209 La. 410, 24 So.2d 670 (aggravated rape) and State v. Nichols, 216 La. 622, 44 So.2d 318 (manslaughter).
If the contrary prevailing view in this case is to stand, it would seem to follow that all of the above cited authorities are necessarily overruled by indirection. As I am in agreement with those adjudications, I respectfully dissent from the majority opinion for this and for the reasons more fully set forth in my dissenting opinion in the companion case of State v. McQueen, 230 La. 55, 87 So.2d 727.
NOTES
[1] The defendant was sentenced to pay a fine of $350 and costs, and to serve 90 days in the parish jail, subject to work, and also to serve an additional 60 days in the parish jail in default of paying the fine.
[2] Article 90 of the Criminal Code provides that "Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit. Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than one year, or both."
[3] So far as we have been able to determine, there is no comparable code in any other state, and the crimes denounced in our Criminal Code are far more broad and general than the language used in any other statutes. This is understandable in view of the fact that several hundred statutes of Louisiana denouncing certain acts as criminal were, at the time the Criminal Code was drafted, incorporated in 142 short articles.
[4] The pertinent part of this amendment provides that "in all cases of crimes included in the Criminal Code but not covered by the (specific) short forms hereinbefore set forth, it shall be sufficient to charge the defendant by using the name and article number of the offense committed." LSA-R.S. 15:235.
[5] The Sixth Amendment to the Constitution of the United States and Section 10 of Article I of the Louisiana Constitution of 1921.
[6] The state cites as additional authority State v. Pete, 206 La. 1078, 20 So.2d 369; State v. Chanet, 209 La. 410, 24 So.2d 670, 671; State v. Nichols, 216 La. 622, 44 So.2d 318; State v. Holmes, 223 La. 397, 65 So.2d 890; and State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 (a New Mexico case). Reference is also made to articles appearing at 6 Louisiana Law Review 461, 715, and 22 Tulane Law Review 220. As will be hereafter pointed out, none of these authorities is controlling in the instant case.
[7] A search reveals no other case in this country has held good a charge of gambling by statute number and name. Even those states where crimes may be charged in such a manner, more detailed information and facts are required. Also, no other states appear to have such a broad and general definition of gambling as is contained in our Criminal Code. See, State v. Helbert, 135 Kan. 726, 12 P. 2d 726; Timmons v. State, 120 Tex.Cr.R. 76, 49 S.W.2d 818; Grundy v. State, 129 Tex.Cr.R. 93, 83 S.W.2d 991; Mastoras v. State, 28 Ala.App. 123, 180 So. 113; Rader v. Commonwealth, 287 Ky. 282, 152 S.W.2d 937; State v. Johnson, Wash., 148 P.2d 320; State v. Frisby, Mo., 214 S.W.2d 552; State v. Ardovino, 55 N.M. 161, 228 P.2d 947; People v. Lightstone, 330 Mich. 672, 48 N.W.2d 146; People v. Yachelson, Co.Ct., 126 N.Y.S.2d 29; and People v. Sparacino, Co.Ct., 132 N.Y.S.2d 32.
[8] State v. Goodson, 116 La. 388, 40 So. 771; State v. Long, 129 La. 777, 56 So. 884; State v. Hewitt, 131 La. 115, 59 So. 35; State v. Bienvenn, 207 La. 859, 22 So.2d 196; State v. Varnado, 208 La. 319, 23 So.2d 106; State v. Pettifield, 210 La. 609, 27 So.2d 424; State v. Espinosa, 223 La. 520, 66 So.2d 323; and State v. Dabbs, 228 La. 960, 84 So.2d 601. See, also, State v. Lehigh Valley R. Co., 94 N.J.L. 171, 111 A. 257, 10 A.L.R. 982; 5 A.L.R.2d 447; 27 Am.Jur. 672, Sec. 112; 31 C.J. 752, Sec. 310; 42 C.J.S. Indictments and Informations, § 156, p. 1101; United States v. Kessler, D.C., 43 F.Supp. 408; United States v. Johnson, D.C., 53 F.Supp. 167; United States v. Callanan, D.C., 113 F.Supp. 766; United States v. Lattimore, 94 U.S.App. D.C. 268, 215 F.2d 847; Kittleson v. State, 152 Fla. 242, 9 So.2d 807; People v. Flynn, 275 Ill. 366, 31 N.E.2d 591; Campfield v. State, 91 Ohio App. 74, 105 N.E.2d 661; State v. Kearns, Ohio Com. PI., 126 N.E.2d 607; State v. Gibbs, 134 N.J.L. 366, 48 A.2d 300; State v. Daly, 3 N.J.Super. 247, 66 A.2d 354; State v. Sullivan, 33 N.J.Super. 138, 109 A.2d 430; Commonwealth v. Hershman, 171 Pa. Super. 134, 90 A.2d 314; State v. Jessup, 98 Utah 482, 100 P.2d 969; State v. Spencer, Utah, 117 P.2d 455; State v. Wong Sun, Mont., 133 P.2d 761; State v. Greer, 238 N.C. 325, 77 S.E.2d 917; Stanley v. State, 171 Tenn. 406, 104 S.W. 3d 819; and State v. Jorjorian, R.I., 107 A.2d 468.
[9] In the Brooks case the court stated [173 La. 9, 136 So. 73]: "Whether the indictment be sufficient in these respects is not now a matter before this court for decision, as defendant was not permitted to withdraw his plea of not guilty and file his motion to quash."
[10] As will hereafter be pointed out, the variation in the constitutional provisions of the states accounts for court decisions holding constitutional criminal accusations that are charged in an indictment, information, presentment, in a bill of particulars, and whether these instruments must be read together with grand jury minutes to determine whether the accused has been constitutionally informed of the nature and cause of the accusation and will be protected from double jeopardy.
[11] Section 10 of Article I of the Louisiana Constitution of 1921.
[12] Section 9 of Article I of the Louisiana Constitution of 1921.
[13] The other requirements, not pertinent here, are that all capital cases must be charged in an indictment or presentment of the grand jury, except such as arise during times of war and public danger. In misdemeanor cases, the legislature is authorized to provide for prosecution by affidavit.
[14] Section 2 of Article I of the Louisiana Constitution of 1921.
[15] Comments under Sections 154 and 155 of this model code. The indictment dates from the guarantees contained in the great Magna Carta, but Blackstone points out that prosecution by information (or suggestion), filed by the king's designated officers, is as ancient as the common law itself, though originally confined to misdemeanors. 4 Blackstone 298, etc.
[16] There was a ninth constitutionthe Constitution of 1913, art. 9which provided "no person shall be held to answer for a capital crime unless on a presentment or indictment by a grand jury," excepting only conditions existing in times of war and public danger. However, the convention that drafted this constitution was expressly forbidden to draft any provision inconsistent with the then existing Constitution of 1898 except in so far as the refunding of the state's bonded indebtedness and the statement of the powers and duties of the Sewerage and Water Board of New Orleans were concerned, Act 1 of the Second Extra Session of 1913, and inasmuch as the convention overstepped these limitations and sought to rewrite the entire Constitution of 1898, it was (the Constitution of 1913) in these respects, held to be invalid. See, Foley v. Democratic Parish Committee, 138 La. 220, 70 So. 104; Sheridan v. Police Jury of Washington Parish, 145 La. 403, 82 So. 386; and Huff v. Selber, D.C., 10 F. 2d 236.
[17] Twenty-nine states require the accused "demand" the nature and cause of the accusation, i. e., Alabama, Arizona, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Mississippi, Missouri, Montana, Nebraska, New Mexico (by a 1924 amendment), Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, and Wyoming.
[18] See the comment in 14 Texas Law Review 101 as to the effect of the use of the word "demand" in this sense.
[19] California, Idaho, Nevada, New Hampshire, North Dakota, Massachusetts, Maryland, West Virginia. Massachusetts, New Hampshire, and West Virginia provide constitutionally for no method of prosecution, requiring only that the accused be "fully, plainly, substantially, and formally" informed of the offense, while Maryland guarantees an accused will be informed of the accusation and furnished a copy only "if required." Provision is made for a preliminary examination before a committing magistrate in the California and Idaho constitutions, while Nevada and North Dakota guarantee only that felony and capital cases will be prosecuted by indictment.
[20] In fact, Rhode Island holds a bill of particulars can never cure a defect in substance in an indictment, and that the General Assembly in adopting these simplified forms did not intend thereby to invalidate in whole or in part, the accepted forms nor to attempt to change the essentials of pleading required by the constitution. State v. Smith, 56 R.I. 168, 184 A. 494. See, also, State v. Domanski, 57 R.I. 500, 190 A. 854, 857, where Rhode Island held the provision in the constitution guaranteeing an accused shall be informed of the nature and cause of the accusation clearly "signifies that the charge in an indictment shall be sufficient in law to fully and plainly identify the offense with which the defendant is sought to be charged." See the even more recent case of State v. Jorjorian, R.I., 107 A.2d 468.
[21] People v. Median, 142 Misc. 605, 254 N.Y.S. 477; People ex rel. Todak v. Hunt, 153 Misc. 783, 275 N.Y.S. 115, and People v. Klein, 159 Misc. 465, 288 N.Y. S. 146. These point out the constitutionality of the indictment was never questioned in the trial court in the Bogdanoff case; that under New York law the accused was entitled to a bill of particulars as a matter of right, and, also, a transcript of the proceedings before the grand jury that indicted him, and that if the three read together informed the accused of the nature and cause of the accusation, this was sufficient. They also point out that the majority opinion specifically states it must not be "`regarded as a judicial approval of the form of indictment used' * * *." [142 Misc. 605, 254 N.Y. S. 498.] The Meehan case states that "This step in the direction of simplification has never resulted in the intentional upholding of a bad complaint, nor in a ruling that its inadequacy could be eked out by a bill of particulars." Furthermore, under no condition could the ruling apply to an information, which must stand by itself without aid of a bill of particulars. People v. Opalka, 204 Misc. 791, 125 N.Y.S.2d 790. Little reliance has been placed on the Bogdanoff case outside of New York, and, in fact, the dissenting opinion is almost as frequently quoted. Prosecutors in New York are themselves wary of the holding, and rely, instead, on proven forms. See the comment at 53 Harvard Law Review 122.
[22] It would appear North Dakota had such a provision under 1939 law, c. 132, but this was repealed in the 1943 revision, and an entirely different procedure, with stress upon the use of an examining magistrate before any charge may be levelled. Arkansas in 1937, amending C. & M.Dig.1921, Sec. 3028, provided it was unnecessary to include in a criminal charge a statement of the acts or facts constituting the offense, but this statute was amended by Act 359 of 1943 to provide the charge must be direct and certain as to the party, the offense, and the particular circumstances. Even Utah has specifically held a bill of particulars may not supply a defect in a fundamentally bad charge, and that an accused is under no obligation to demand a bill at the risk of waiving some of his rights; further, that the new procedure was never intended as a substitute for insufficient facts, the specific forms being exemplary only, and the courts reserved the right to pass on the sufficiency of such charges in specific cases. See, State v. Hill, Utah, 116 P.2d 392, and State v. Spencer, Utah, 121 P.2d 912. In a recent law review article at 47 W.Va.Law Review 336, a study of the situation in that state discloses that since 1931 there has been a tendency on the part of the West Virginia court to declare the statutory indictments void unless every essential element of the offense is charged.
[23] New Jersey, Texas, and West Virginia formerly provided for these specific short forms, but recent legislative action has apparently abrogated them.
[24] See the comment at 19 Iowa Law Review 628. In Louisiana the grand jury sessions are secret. Article 215 of the Code of Criminal Procedure, now R.S. 15:215.
[25] As pointed out by Professor Ernst W. Puttkammer in his work on the Administration of Criminal Law, "While the short form's convenience to the prosecutor is obvious, it is usually not popular even with this official. Why this should be so can easily be understood by putting one's self in his place. If he is conscientious, he will do his best to secure a conviction which will not be reversed. If he is ambitious, he will have the same goal. His office files are full of forms used by him and his predecessors forms tried and not found wanting, with not a single detail and adornment left out. What inducement is there for him to experiment with this innovation, merely to determine its constitutionality for the benefit of his colleagues and successors? It is no wonder that in many states short forms have been on the statute books for years but have not yet undergone the constitutional test of being used and being carried to the supreme court."
[26] Alabama, Arkansas, Delaware, Georgia, Idaho, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, Nevada, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, and Washington. The only exception is that facts involving charges of sexual debauchery and other crimes of obscenity need not as a general rule be given in detail. These crimes, within themselves, contain their own reason for the exception.
[27] It is obvious Louisiana now has four different ways of charging crimes, i. e., (1) by the use of the specific forms set out in Article 235 where the crime is there named, (2) by the use of these specific forms with added facts such as the prosecuting attorney may choose to include, under the 1944 amendment to Article 235, (3) by the use of the name and number of the article if the crime is denounced in the Criminal Code and not among the specific short forms, also under the 1944 amendment, and (4) where the crime denounced is not included either in the specific forms in Article 235 or in the Criminal Code. In all instances, however, the bill of particulars is not furnished the accused as a matter of right. See Article 235 as amended in 1944, and Article 288 of the Code of Criminal Procedure, R.S. 15:288.
[28] Although at its inception in 1923 the members of the American Law Institute felt the criminal substantive and procedural law of the country needed study, many strenuously objected to the release of this code setting forth what the Institute thought the criminal procedure ought to be, since the Institute was formed to restate the law as it is. See the proceedings of the Institute, particularly Volumes I and III.
[29] A bill of particulars was unknown to the ancient common law of England, and it is only in more recent times that it has been applied in criminal proceedings. It seems the practice of furnishing a bill of particulars originated in civil actions in England, arising out of the use of common-law counts in actions of debt and assumpsit. One of the earliest records of the use of such a bill was in a divorce action in England in 1692. It is entirely a creature of jurisprudence, being employed by the court under its inherent power to accord justice to the parties appearing to answer charges against them where these are not sufficiently full in the petition to permit proper defense. Even in the civil action the bill of particulars could not serve the purpose of stating a cause of action that must be set out in the petition, and it could not even serve the purpose of aiding a petition that did not state a cause of action. See, Commonwealth v. Snelling, 15 Pick., Mass., 321; Thalheira v. State, 38 Fla. 169, 20 So. 938; Byers v. Tabb, 76 Miss. 843, 25 So. 492; Mathis v. State, 45 Fla. 46, 34 So. 287; State v. Lewis, 69 W.Va. 472, 72 S.E. 475; Pine v. Commonwealth, 121 Va. 812, 93 S.E. 652.
[30] These reasons have no application in Louisiana. Since 1812, the information has been available to the prosecuting attorney, and Article 253 of the Code of Criminal Procedure, LSA-R.S. 15:253, provides that "The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence."
[31] Alabama, Arkansas, Mississippi, Missouri, California, South Carolina, Texas, and Tennessee appear not to recognize the use of bills of particulars in criminal trials. See, Gayden v. State, 262 Ala. 468, 80 So.2d 501; Westbrooks v. State, 76 Miss. 710, 711, 25 So. 491; People v. Thorn, 138 Cal.App. 714, 33 P.2d 5; State v. Noell, 220 Mo.App. 883, 295 S.W. 529; State v. Wells, 162 S.C. 509, 161 S.E. 177; Stanley v. State, 171 Tenn. 406, 104 S.W.2d 819.
[32] See the annotation at 5 A.L.R.2d 444-569. See, also, Article 235, as amended in 1944, and Article 288 of the Louisiana Code of Criminal Procedure.
[33] In State v. Bienvenu, 207 La. 859, 22 So.2d 196, 198, the court said: "* * * defendant is not being prosecuted on the bills of particulars, but solely on the informations. A bill of particulars can never take a criminal prosecution out of the statute on which the indictment or information is based. The sole office of a bill of particulars is to give the adverse party information which the pleadings by reason of their generality do not give and to compel the State to observe certain limitations in offering evidence. The bill of particulars can not change the offense charged nor in any way aid an indictment or information fundamentally bad." In the very recent case of State v. Dabbs, 228 La. 960, 84 So.2d 601, 602, we said: "Irrespective of what may be contained or set forth in the bill of particulars relied on by the defendant to support his contention presented by these bills, we are not concerned therewith. * * * There can be no prosecution on a bill of particulars. Nor can the contents of a bill of particulars, whatsoever is set forth therein, alter, change, amend or affect the bill of information. A bill of particulars can neither create a defect in a bill of information nor remedy a defective one."