THE STATE, DEFENDANT IN ERROR, v. LEHIGH VALLEY RAILROAD COMPANY, PLAINTIFF IN ERROR.

Submitted December 8, 1919—Decided March 1, 1920.

A bill of particulars furnished by the state in a criminal case is no part of the indictment or of the judgment record; and an indictment legally sufficient on its face cannot be made demurrable or otherwise attacked as to its legality because the bill of particulars puts the state's case on a claim of facts which, if proved, would constitute either no crime at all or one not within the scope of the indictment.

On error to the Supreme Court, whose opinion is reported in 92 *N. J. L.* 261.

For the plaintiff in error, *Collins & Corbin.*

For the defendant in error, *Pierre P. Garven,* prosecutor of the pleas, and *George T. Vickers,* assistant prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J.    The plaintiff in error was indicted for manslaughter. The indictment was brought into the Supreme Court by *certiorari,* and on a motion to quash made in that court, was upheld. *State* v. *Lehigh Valley Railroad Co.,* 90 *N. J. L.* 372. The case went back for trial, and after a *nolle pros.* as to other defendants impleaded, the plaintiff in error entered a plea of *nolo contendere.* On motion for sentence, defendant's counsel moved in arrest of judgment, which motion was denied and sentence was imposed, consisting of a fine. On error the Supreme Court affirmed the judgment (92 *Id.* 261), and its judgment is now brought here for review.

We conclude that the judgment should be affirmed, and, so far as relates to the form of the indictment as covering an accusation of involuntary manslaughter and the criminal liability of a corporation aggregate for such an offence, we adopt the views expressed by the Supreme Court on the motion to quash.

On the motion in arrest, the additional ground was argued that inasmuch as the state by court order had furnished a bill of particulars, which bill exhibited a case which, as plaintiff in error claims, is within section 7 of chapter 342 (*Pamph. L.* 1911), relating to the transport of explosives, that that statute is exclusive, and that in consequence an indictment for manslaughter will not lie. The Supreme Court disposed of this (92 *N. J. L.* 262 *et seq.*) by saying that if the objection be considered as one apparent on the face of the indictment, it came too late on a motion in arrest of judgment under the rule in *State* v. *Alderman,* 81 *Id.* 549; and if, as that court con-

sidered, it was not apparent on the face of the indictment because the bill of particulars was no part of the record, the point was unavailable on a motion in arrest of judgment.

Without going into the first ground taken by the Supreme Court, we are content to rest our affirmance of this judgment on the second. Counsel properly concede that a motion in arrest of judgment can be made only for some cause apparent on the record. *Powe* v. *State,* 48 *N. J. L.* 34, cited by the court below; *State* v. *Hop,* 90 *Id.* 390. Hence, as the facts bringing the case within the act of 1911 appear not in the indictment itself, but only in the bill of particulars, counsel are perforce driven to the position that such bill is part of the record. We are unable to give our assent to this, and all the reliable authority seems to be the other way.

In *Com.* v. *Davis,* 11 *Pick.* 432, 434, 435, Chief Justice Shaw said that "the bill of particulars affects the proof and the mode of trial only, and not the indictment; it is no part of the record; it is not open to demurrer. It is not a matter of technical nicety; and it is to guard against surprise on the trial, under the regulation of the court." And, again, on page 435: "It is no part of the record, it would not appear in the judgment, or in any respect change its character or effects." Later, in *Com.* v. *Snelling,* 15 *Id.* 321, he examined the subject more particularly, noting the importance and increasing use of bills of particulars in cases both civil and criminal, where the pleadings are general in form. The present case is in that class by express provision of statute. Criminal Procedure act, section 36, *Comp. Stat., p.* 1832. In *Dunlop* v. *United States,* 165 *U. S.* 486, 490, an indictment for sending obscene matter through the mails, it was alleged for error that the court had overruled a motion requiring the government attorney to file the alleged obscene matter "for the purpose of enabling defendant to demur to the indictment." The court said: "If it had been furnished, it would not have been the subject of demurrer, since it is no part of the record," citing *Com.* v. *Davis, supra,* and adding: "If the indictment be not demurrable upon its face, it would not become so by the addition of a bill of particulars."

In *Jules* v. *State* (*Md.*), 36 *Atl. Rep.* 1027, 1029, defend-
ant undertook to demur to a bill of particulars and the court
held this could not be done, quoting *Whart. Cr. Pl.*, § 702.
The same rule, with citation of other cases, will be found in 1
*Bish. New Cr. Pro.*, § 644, and 22 *Cyc.* 372, especially *note* 24.
A similar rule prevails in civil cases, as, indeed, it should.
*State Street Church* v. *Gordon*, 31 *N. J. L.* 264. The subject
is adverted to in *Watkins* v. *Cope*, 84 *Id.* 143, 147, and *State*
v. *Pennsylvania Railroad Co.*, *Id.* 550, 553. The theory of
ordering particulars is to limit the proof to matters specified
in the bill of particulars and to enable the other party to meet
his opponent's proof without danger of surprise. Conse-
quently, such bills have relation to the trial and not to the
record. It follows that when the present defendant pleaded
*non vult* it pleaded to an indictment for manslaughter gen-
erally and not to a statement of facts designed to limit the
proof thereunder to acts of negligence in transporting explo-
sives. This makes it unnecessary to consider whether the act
of 1911 is exclusive, as claimed, and no opinion on that point
is intimated.

The case of *State* v. *Mowser*, 92 *N. J. L.* 474, is not at vari-
ance with the foregoing views. In that case the court, on the
application of defendant, ordered a bill of particulars, which
was dealt with; not as impugning or qualifying the legal suffi-
ciency of the indictment as charging a crime, but as limiting
the state to proof of a homicide legally identified with a rob-
bery of which he had already been convicted. Similarly, in
this case, if defendant instead of pleading *non vult* had gone
to trial, held the state's proof down to the bill of particulars,
and then moved an acquittal on the ground that the facts, if
proved, did not constitute the crime of manslaughter but a
statutory offence under the act of 1911, and a refusal of such
acquittal had been brought here, the point attempted to be
argued would be before us. But the plea entered was in legal
intendment to the indictment and not to the bill of particu-
lars, which, as we have already said, was no part of the
record.

The judgment will be affirmed.

KALISCH, J. (dissenting).  I am unable to concur in the result reached by this court in its affirmance of the judgment below.    This case was before the Supreme Court in two aspects, both involving the identical question as to whether or not a corporation aggregate could be held criminally responsible for manslaughter.  The motion to quash was denied by the Supreme Court in an opinion which held that the corporation was indictable for the crime.    90 *N. J. L.* 373.    The defendant then pleaded *non vult* in the trial court and moved in arrest of judgment, the principal ground urged being, that it could not be held criminally answerable for manslaughter under the laws of this state.    This motion was denied and judgment was entered against the defendant.    Upon review of the errors assigned, the Supreme Court affirmed the judgment and, among other matters, held that the defendant was criminally amenable to indictment and punishment for manslaughter, for the reasons stated by it, on the motion to quash. 92 *Id.* 261, 263.    It is not pretended that at common law a corporation was indictable for manslaughter.    It is assumed in the opinion of the Supreme Court on the motion to quash (90 *Id.* 373) that *State* v. *Morris and Essex Railroad Co.*, 23 *Id.* 360; *State* v. *Passaic Ag. Soc.*, 54 *Id.* 260; *State* v. *Erie Railroad Co.*, 83 *Id.* 231; 84 *Id.* 661; *State* v. *Lehigh Valley Railroad Co., supra*, modify the common law on the subject. But a careful examination of the cases cited will make it plain that these cases do not support the assumption.

Although a corporation was indictable at common law for acts of malfeasance as well as for non-feasance, no case can be found in the books which goes to the extent that a corporation, without express legislative enactment, may be held criminally responsible for an offence which was felony at common law or involved *malus animus*.    The decisions of sister states in which corporations have been held to be criminally responsible for offences of the nature mentioned are the product of statutes creating such liability.

The Supreme Court seems to hold the view that Chief Justice Green in *State* v. *Morris and Essex Railroad Co., supra,* laid down a rule modifying the common law in regard to

criminal liability of corporations to indictment. But I am unable to find anything in the opinion of the learned Chief Justice which justifies any such conclusion. He was dealing with an indictment charging the defendant with the creation of a nuisance, and (at *p.* 364) he says: "The law is well settled that a corporation aggregate is liable to indictment. It is said, indeed, by Blackstone that a corporation cannot commit treason, felony or other crime in its corporate capacity, citing the case of *Sutton's Hospital*, 10 *Coke* 32. * * * While it is conceded that a corporation cannot from its nature be guilty of treason, felony or other crime involving *malus animus* in its commission, it is believed there is no authority, ancient or modern, which denies the liability of a corporation aggregate to indictment. * * *"

Bearing in mind that the learned Chief Justice was dealing with an indictment for a nuisance, where the question was whether an indictment would lie against a corporation for maintaining a nuisance, his deliverance (at *p.* 370) as to the liability of a corporation to indictment for such an offence and his reason therefor, significantly and emphatically point to cases of nuisance and offences akin thereto, in dealing with which the court may as part of the judgment abate the nuisance or enforce the performance of a neglected duty. The learned jurist said (on *p.* 370) : "It is true that there are crimes [perjury, for example] of which a corporation cannot, in the nature of things, be guilty. There are other crimes, as treason and murder, for which the punishment imposed by law cannot be inflicted upon a corporation. Nor can they be liable for any crime of which a corrupt intent or *malus animus* is an essential ingredient. But the *creation* of a *mere nuisance* involves no such element. It is totally immaterial whether the person erecting the nuisance does it ignorantly or by design, with a good intent or an evil intent; and there is no reason why for such an offence a corporation should not be indicted."

"There is a strong reason, which does not seem to have been adverted to in the reported cases, why the corporation, and not the individual directors or laborers, should be indicted for the

creation of a nuisance. The principal object of an indictment for a nuisance is to compel it to be abated; and regularly a part of the judgment on conviction is that the nuisance be abated." (Cases cited.)

It seems to me that the only reasonable inference permissible from what the learned jurist so succinctly stated is, that he limits the liability of a corporation to indictment to offences committed which are of a remedial nature, such as maintaining a nuisance, or of kindred offences, like the failure to perform a public duty or for performing a public duty in an unlawful manner.

A careful reading of the opinion of the learned Chief Justice clearly demonstrates that he rests his conclusion that a corporation aggregate was indictable at common law for maintaining a nuisance, which was the nature of the case that was before the court for decision, upon the grounds, first, that there were precedents to be found for such procedure at common law going back as far as the year 1635, and secondly, because by the judgment of the court the nuisance could be abated. But there is no precedent of an indictment against a corporation for manslaughter to be found at common law prior to the adoption of our constitution, nor is there any precedent to be found since, notwithstanding that it is a matter of common knowledge that frequent instances have occurred warranting indictments for manslaughter where corporations were more or less culpable, for the reason that it was the consensus of opinion of bench and bar from time immemorial that an indictment for manslaughter would not lie against a corporation aggregate.

The question here is not whether a corporation aggregate ought not to be held liable to indictment for manslaughter, but the prime question is whether or not a corporation aggregate was indictable for manslaughter at common law. If it was not so indictable at common law, then unless there is a statute making it amenable to indictment for the offence, the indictment must be held to be nugatory.

The Supreme Court, in holding the indictment to be valid, is constrained to recognize the indubitable fact that no such

indictment would lie at common law, and, hence, it is forced to rest its determination to uphold the validity of the indictment upon the assertion that the common law has been modified. But this is an extremely dangerous step to take, and if carried out to its legitimate consequences, might seriously affect the administration of the criminal jurisprudence of this state and the safety of its citizens. I can easily comprehend how the common law may be modified by statute, but am unable to perceive by what authority a court may in a criminal case modify the common law, so as to make an artificial body amenable to indictment for crime, which was not the case before such judicial declaration. This is clearly a judicial enactment in the nature of an *ex post facto* law.

In view of the declaration of article 10 of our constitution that the common law and statute law now in force, not repugnant to the constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature, the court is wholly without any power to modify the common law so as to make corporations liable to indictment for manslaughter, which were not so at common law. The attempt to modify the common law on the subject is clearly the exercise of a legislative function which a court cannot constitutionally exercise.

To alter the common law, as here, is a matter of substance, and bears no analogy to the application of well-recognized common law principles to new facts, situations or conditions which might arise from time to time in the progress of our domestic or business life.

It is suggested in the opinion of the Supreme Court that since a fine or imprisonment may be imposed upon a conviction of manslaughter, a corporation may be punished by way of fine, and as section 9 of the act relative to statutes the word "person" is declared to include bodies corporate (artificial persons) as well as individuals (natural persons), and that the same provision in somewhat different form appears in section 220 of the Crimes act, that, therefore, there is statutory authority for indicting a corporation for manslaughter.

But this reasoning seems to me to be manifestly unsound. To adopt the test suggested, that where a fine may be imposed as a part or whole punishment upon the offender, by virtue of the statute, a corporation may be indicted for the offence denounced, would render a corporation liable to indictment for any offence in the category of offences denounced in our Crimes act, with the exception of treason and murder. This in the very nature of most of the offences cannot be reasonably so. Thus, as examples, offences involving moral turpitude, such as sodomy, rape, adultery, fornication, &c. Yet these offences may by statute be punished by fine or imprisonment, or both. While it is true that section 220 of the Crimes act, *inter alia,* provides that whenever in describing or referring to any person, matter or thing, any word importing the singular number or masculine gender is used in the statute, the same shall be understood to include and shall apply to several persons and parties as one person or party, and females as well as males, and bodies corporate as well as individuals, unless there be something in the subject or context repugnant to such construction, it will require a violent departure from firmly established rules of statutory interpretation to hold that it was the legislative intent to subject a corporation to an indictment for manslaughter. It is axiomatic that penal statutes must be strictly construed. In order to include a corporation within the term "person" designated by the various sections of the Crimes act, it must appear by express terms that it was the legislative intent to subject a corporation to indictment for manslaughter. This does not appear.

It is clear to me, at least, that the object of the statutory provision was intended to prevent the escape of offenders against the law, from conviction under the Crimes act, where corporations were the victims, as for instance, where money or other property is obtained from a corporation under false pretences under a statute using the term "person" only. *State v. Reynolds,* 65 N. J. L. 424.

Furthermore, it is to be observed that by many sections of the Crimes act where the legislature intended to make a cor-

poration amenable to indictment it has expressly declared so. This must be given significance in interpreting section 220.

But the inapplicability of section 220 is further supported by the fact that the Crimes act has placed a corporation in a class by itself. Special proceedings are provided for its appearance in court under an indictment, which proceedings are of a purely civil nature. Prior to the act of 1837, page 125, and the supplement thereto of 1841, page 18, there was no way provided to compel a corporation to appear to an indictment. Lastly, the crime of manslaughter is a common law offence in this state and there is no statute defining it. As section 220 refers to the use of the term "person" in a statute, the section has obviously no application to where the offence is manslaughter.

There is nothing to prevent the legislature from enacting a statute providing for indictment of a corporation for crimes and misdemeanors with adequate punishment upon conviction, but it seems to me to be a mockery of justice to shield those personally responsible for a great disaster under a prosecution of this character in which the most that can be exacted is a monetary penalty which serves neither as adequate punishment nor as a deterrent.

I am in accord with the views expressed in the opinion of this court that a bill of particulars forms no part of the judgment record.

For the reasons herein stated I vote to reverse the judgment.

Judges White, Heppenheimer and Taylor request me to state that they concur in the views expressed herein.

*For affirmance*—THE CHANCELLOR, PARKER, BERGEN, MINTURN, BLACK, WILLIAMS, GARDNER, ACKERSON, JJ. 8.

*For reversal*—KALISCH, WHITE, HEPPENHEIMER, TAYLOR, JJ. 4.