FOURNET, Justice.
 

 The relator, George Pettifield, having-been-tried and convicted on a bill of information charging him with having violated the compulsory attendance school law, Act No. 239 of 1944, and being without right of appeal because he was sentenced to pay a fine of $50 and costs and to serve 30 days in jail, the jail sentence being suspended (Section 10 of Article VII of the Constitution of 1921), applied to this court for and was granted a writ of certiorari to the end that these proceedings might be reviewed and their validity ascertained. Pending our decision in the matter, all proceedings against him were ordered stayed and suspended.
 

 Counsel for the relator contend that (1) “prosecutions under Act No. 239 of 1944 can be maintained only if it is administered and enforced by the parish school board in the manner prescribed therein”; (2) “the state must show that the subject child was not exempted from the provisions of the law, and that such was found to be so, in the first instance, by the parish school board,” the mere showing of the absence of the child not being sufficient;. (3) the defendant was convicted on improper e.vi-. dence, and (4) the bill of information is fatally defective on its face.
 

 On the other hand it is the contention of the prosecuting attorney that if a parent, guardian, or other person having control of a child or children of compulsory school age does not send the child to school, such person is subject to prosecution and this prosecution can be instituted at the instance of any individual, the provisions- for the appointment of visiting teachers and their investment with specific functions and duties in Act No. 239 of 1944 being nothing more than the machinery set up by the legislature to insure the administration of the act; too, that while the exemptions named in the act may be urged as a defense, it is not necessary that the indictment or information affirmatively show the same. It is the prosecuting attorney’s further contention that the bill of information when read
 
 *614
 
 together with the information voluntarily-furnished in answer to the bill of particulars filed on behalf of the relator sufficiently informed him as to what the state intended to prove against him and placed him on his guard in this respect. He denies the defendant was convicted on improper evidence and contends that even if some of the trial judge’s rulings were improper the relator is not entitled to a reversal unless he can show that he was prejudiced by such ruling, under Article 557 of the Code of Criminal Procedure.
 

 The pertinent provisions of Act No. 239 of 1944 are as follows:
 

 Section 1 provides “That every parent, guardian, or other person residing within the State of Louisiana, having control or charge of any child or children between the ages of seven and fifteen years, both inclusive (i. e., from the seventh to the sixteenth birthday), shall send such child or children to a public or private day school under such penalty for noncompliance herewith as is hereafter provided.”
 

 The minimum session of attendance is fixed in Section 2 at 180 days, “or for the full session of the public school which the child would normally attend.”
 

 Under Section 3 children who (a) are mentally or physically incapacitated to perform school duties, (b) live beyond certain distances of cities or schools where transportation is not furnished, and (c) are temporarily excused “under rules and regulations promulgated by the State Board of Education,” are exempt from the provisions of the act,
 
 “the parish school board to be sole judge in all such cases.”
 
 (Italics ours.)
 

 In order that the provisions of this act may be enforced, Section 4 makes it the mandatory duty- of the Superintendent of Education to appoint and designate a member of his department to serve as State Supervisor of Attendance with general supervision over visiting teachers, his duties to be prescribed in rules and regulations made by the State Superintendent of Education.
 

 Section 5 makes it the mandatory duty of each parish school board within the state
 
 “to administer this Act and to secure its enforcement ”
 
 and to that end each par-' ish school board is authorized to employ at least one competent and qualified full-time visiting teacher whose duty it shall be to enforce the compulsory attendance laws of the State. (Italics ours.)
 

 The powej-s and duties of such visiting teachers are declared, in Section 7, to be those theretofore vested, or which may hereafter be vested, in attendance or truant officers by the compulsory attendance laws of the state, and they are required “to make monthly and annual reports on attendance and other problems of child-school adjustments in their parishes to the parish superintendents of education and to the State Supervisor of Attendance; and to comply with the rules and regulations of the parish school boards and the State
 
 *616
 
 Board of Education,” and also
 
 “to serve such writs and process in law relating to compulsory school attendance as may be necessary for the enforcement of1 the act.
 
 (Italics ours.)
 

 Under Section 9 the heads of all of the schools are required to furnish the visiting teachers with a list of all of the pupils registered in the school within 30 days following the opening of the school term showing their names, ages, and residences, and they are required to keep daily reports of attendance, verified by the teacher making such report, and these are to be open for the visiting teacher’s inspection at all reasonable times. In this section is also contained the further provision that “Any person violating any provision of this Section, or of the rules and regulations of the State Board of Education previously published one time in the official journal of the State shall be deemed guilty of a misdemeanor, and shall be punished in accordance with the provisions of Section 10 of this Act.”
 

 Section 10 makes it a misdemeanor for any parent, guardian, or other person having control of a child or children to violate the provisions of the act, subject to a fine of $10 or 10 days, or both, at the discretion of the court,
 
 for each unjustifiable ■absence.
 
 This same section follows with the provision that “Visiting teachers, or other persons authorized to serve instead of visiting teachers as provided in Section 5 hereof,
 
 with the approval of the parish superintendent of
 
 education, shall have authority and it shall be their duty to file proceedings in court to enforce the provisions of this Act.” (Italics ours.)
 

 Obviously it was the legislature’s object in enacting this legislation to obtain the compulsory attendance of all children between the ages of 7 and 15, both inclusive, except those specifically declared to be exempt, at school for a full session of 180 days, or the normal public school session of 9 months of 20 days each, and to designate the parish school boards the sole judges of just what children in this age group came within those exemptions, including those temporarily excused from attendance. In order to insure the equitable and judicious administration and enforcement of the act, the legislature directed the Superintendent of Education to appoint or designate a member of his department to serve as State Supervisor of Attendance and to prescribe the duties of such supervisor. It authorized the State Board of Education to make the rules and regulations necessary to promote the purposes of the act and the parish school boards to appoint competent and qualified full-time visiting teachers recommended and approved by the parish superintendent of education from a list furnished by the State Superintendent of Education, the duties of such visiting teachers being the enforcement of the compulsory attendance law of the state in compliance with the rules and regulations promulgated by the
 
 *618
 
 State Board of Education and made by the ■school boards of the respective parishes.To facilitate the enforcement of the act the legislature required the schools to keep ■daily attendance records for the inspection •of the visiting teacher and to furnish the visiting teacher with a list of all of the pupils registered in the school. Finally, to coerce the parent, guardian, or other person having control of a child or chil-dren of compulsory school age to cooperate in the enforcement of the act, the lawmakers authorized the visiting teacher, with the approval of the parish superintendent of education, to file proceedings in court against such parent or guardian for any unjustifiable absence.
 

 It was never the intention of the legislators that the act be administered and enforced in any other manner than as therein provided. To hold otherwise might, in our opinion, not only lead to frequent unjust accusations and abuses and result in gross injustices, but would also tend to create bitterness among neighbors and other citizens of the community who might undertake to enforce the act, for, although such individuals might be ever so sincere in their desire to see that the children of -the community obtain a proper education, •they are uninformed as to whether an absent child has been legally exempt from attendance by reason of an excuse issued by the proper authorities, some physical defect, or residence outside the school limits, with the result that instead of coercing the good-will cooperation of par-’ ents in the enforcement of the act and abetter relationship between the parents and the school authorities it would bring about a condition of revengeful disunity and the creation of unnecessary hardship.
 

 We think some of the facts of this case speak more eloquently than we can of the laudable and beneficent purposes of this law and the wisdom shown by the legislators in enacting it.
 

 The relator is a man of limited education and earning capacity and is away from home during the school hours throughout the entire week working as a bus driver at
 
 70‡
 
 an hour in order that he may support his wife and thirteen children. So far as the record discloses, he sends all of his children between
 
 7
 
 and IS to school and they attend regularly, with the exception of the subject child Charles, who, also according to the record, has been absent frequently, for what reason the record is not quite clear although it strongly indicates he is an incorrigible and delinquent child. Of necessity it is impossible for the relator to personally supervise his errant son’s attendance at school. As was very aptly pointed out by Miss Harrington, principal of the school Charles attends, in answer to the district attorney’s query as to whether or not she asked the relator himself the reason for this child’s absence from school: “You asked if I had taken-up the matter with Mr. Pettifield. Mr. Pettifield never has time to come to the
 
 *620
 
 school. Mrs. Pettifield sometimes does and she takes care of the affairs of the family in so far as the children are concerned.'’
 

 Obviously, therefore, the visiting teacher, pursuant to the rules and regulations promulgated by the State Board of Education and those adopted by the parish school board, and under the guidance of .the parish superintendent of education, is in a better position than anyone else to determine whether a parent or guardian or other person having control of a child should be prosecuted under the law or whether the child should be reported "to the Juvenile Court of the parish as a delinquent child, there to be dealt with in such manner as the judge of said court may determine, either by placing said delinquent [child] in a home, public or private institution, where school may be provided for such child, .or otherwise,” as provided in Section 11 of the act.
 

 While we do not think an information or indictment under the act need affirmatively show the parish school board has set up the required procedure to administer and enforce the act, it is our opinion that the state must, on the trial of the case, show the prosecution was initiated through the proper authority with the approval of the parish superintendent of education, and an accusation, to be valid, must show that the defendant unjustifiably failed to send the subject child to school, giving his or her name and age and the dates of such absences. These allegations, we think, are sacramental and necessary for a valid accusation.
 

 The information in the instant case is fatally defective in that in charging the defendant with having “unlawfully failed to send his child to school, in violation of Act No. 239 of 1944,” it merely states a conclusion of law without detailing the facts and circumstances upon which such conclusion is based, contrary to the mandatory provisions of the law and the constitution of Louisiana. Article
 
 227
 
 of the Code of Criminal Procedure and Section 10 of Article I of the constitution.
 

 The information voluntarily .furnished by the district attorney in response to the bill of particulars previously filed by counsel for the relator merely giving the name and age of the child and the dates on which he failed to attend school cannot cure a fatally defective indictment for,
 
 "A bill of particulars cannot
 
 *. * *
 
 in any way aid an indictment or information fundamentally bad."
 
 State v. Bienvenu, 207 La. 859, 22 So.2d 196, 198. The author of the opinion in that case very aptly pointed out that
 
 "The sole office of a bill of particulars is to give the adverse party information which the pleadings by reason of their generality do not give and to compel the State to observe certain limitations in offering evidence."
 
 See, also, 31 C.J. 752, Section 310; 42 C.J.S., Indictments and Informations § 156; and 27 Am.Jur. 672, Section 112. And the observation by the court in the Bienvenu
 
 *622
 
 case that the
 
 "defendant is not being prosecuted on the bills of particulars, but solely on the informations”
 
 is also applicable h.ere. (Italics ours.)
 

 It is our opinion, therefore, that the motion in arrest of judgment, based on the ■defective information, should have been maintained.
 

 For the reasons assigned the conviction ■of the relator and his sentence thereunder are annulled and set aside, the motion in arrest of judgment is maintained, and the relator is ordered discharged.
 

 O’NIELL, C. J., and HAMITER, J., concur in the decree.
 

 HAWTHORNE and EENNON, JJ., dissent.