107 So.2d 691 (1958)
236 La. 421
STATE of Louisiana
v.
Leon A. PICOU, Jr.
No. 44157.
Supreme Court of Louisiana.
December 15, 1958.
Dissenting Opinion January 8, 1959.
Rehearing Denied January 12, 1959.
*692 Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard Kilbourne, Dist. Atty., Clinton, for appellant.
Fred G. Benton, Sr., Sam J. D'Amico, Gordon M. White, Baton Rouge, John Rarick, St. Francisville, Eugene Stanley, New Orleans, for defendant-appellee.
HAMITER, Justice.
In this criminal proceeding the State of Louisiana is appealing from a judgment sustaining a motion to quash (also a demurrer to) an indictment which charged, in the short form provided for in LRS 15:235, that the defendant, Leon A. Picou, Jr., "* * * on or about the 7th day of August, in the year of Our Lord, One Thousand Nine Hundred and fifty-seven, did with force and arms commit a theft of a twenty percent interest in a right and cause of action at law owned by Warren Wall against Joseph H. Marix and Globe Indemnity Company of New York, of a value of $1,875.00, * * *."
A companion case (State v. Picou, 236 La. 450, 107 So.2d 701), in which the state likewise appealed from a similar ruling, involves an identical charge against this defendant except as to the owner and the value of the right and cause of action. Thus, the indictment therein charged that such defendant "* * * on or about the 7th day of August, in the year of Our Lord, One Thousand Nine Hundred and fifty-seven, did with force and arms commit a theft of a twenty percent interest in a right and cause of action at law owned by Edward H. Hughes against Joseph H. Marix and Globe Indemnity Company of New York, of a value of $5,625.00, * * *."
Since the issues in the two cases are the same our pronouncements and conclusions herein will be applicable also to the companion matter.
To be considered first is a motion by the defendant to dismiss the state's appeal on the grounds that (1) at no time did the judge grant an order of appeal, and (2) the state failed to reserve and perfect a formal bill of exceptions to the court's *693 action in sustaining the motion to quash and the demurrer.
The minutes of the proceedings had in open court indicate that the requisite appeal order was granted by the judge, for they recite (among other things) as follows:
"Order. Upon motion of the District Attorney Hon. R. H. Kilbourne it is ordered that an appeal be hereby granted to Louisiana State Supreme Court returnable on Monday June 23, 1958." With reference to the second ground we are required, even in the absence of perfected bills of exceptions, to determine if there is error patent on the face of the record; and the making of this determination necessitates an entertainment of the appeal. Hence, defendant's motion to dismiss has no merit.
Seeking affirmance of the judgment appealed from, defendant urges that the trial judge properly took into consideration facts disclosed by a bill of particulars furnished by the state and correctly held that the indictment (considered in the light of such bill of particulars) fails to set out the crime of theft as defined by LRS 14:67. The state, on the other hand, insists that the bill of particulars could not legally be considered in determining the validity of the indictment; and that accordingly, particularly since the latter instrument sufficiently charged in the authorized short form the crime of theft, the motion to quash and the demurrer should have been overruled.
The issue thus raised by the state was specifically passed upon in State v. Bessar, 213 La. 299, 34 So.2d 785, 789. Therein, we said: "The indictment returned by the jury in this case being in the short form prescribed by the Code of Criminal Procedure, the defendant was entitled to a bill of particulars setting out more specifically and in detail the offense charged, i. e., the facts upon which the prosecution is based. Article 235, as amended, and this bill, when furnished, operated to limit the scope of proof on the trial by restricting the introduction of evidence to the proof of those facts set out in the bill of particulars. * * * Consequently, the court in considering the motion to quash the indictment must construe those facts as set out in the bill of particulars to be true and determine whether or not, if proved, they constitute the crime charged."
This language was quoted with approval in State v. Masino, 214 La. 744, 38 So.2d 622. Too, in State v. Peterson, 232 La. 931, 95 So.2d 608, 613, we followed and applied the doctrine thus enunciated, holding therein that the bill of information involved, when considered along with the facts disclosed by a bill of particulars, did not state a crime under the laws of this state.
Incidentally, in the Peterson case no member of this court disapproved of the use of the bill of particulars in passing upon the motion to quash. Moreover, there, Chief Justice Fournet, citing approvingly State v. Bessar, supra (the opinion of which he authored), observed in a concurring opinion as follows: "The defendant having been furnished with a bill of particulars on an information charging him with theft of $7,000 * * * the State is bound by these particulars; consequently, the trial judge properly sustained the motion to quash because the facts recited in the bill of particulars, even if proved, fail to constitute the crime charged."
It is true that State v. Dabbs, 228 La. 960, 84 So.2d 601, cited and relied on by the state herein, contains language that seems to be in conflict with the above quoted pronouncements from the Bessar decision. However, such language is apparently obiter dicta, for a close reading of the opinion in the Dabbs case will disclose that the court did consider the recitals of the bill of particulars involved in ruling on a motion to quash.
Consequently, our jurisprudence appears to be to the effect that in passing upon *694 a motion to quash an indictment or an information drawn in the short form as authorized by LRS 15:235 the court can and must take into consideration the facts set forth in a bill of particulars furnished by the state in response to the defendant's motion therefor.
In the instant cause the defendant, while agreeing that for the reasons above set forth the trial judge properly considered the facts contained in the bill of particulars, contends that this court cannot indulge in a like consideration inasmuch as the district attorney failed to attach such bill of particulars (as well as the documents thereto annexed) to a reserved and perfected bill of exceptions. In this connection he argues that as a result of such failure we do not have before us the facts necessary for a proper review of the judgment of the district court and, therefore, we must affirm its ruling.
The contention and argument are without substance. As pointed out above it is our duty in a criminal case, even in the absence of perfected bills of exceptions, to ascertain whether there is error patent on the face of the record. And, according to LRS 15:503, "An error is patent on the face of the record when it is discoverable by the mere inspection of the pleadings and proceedings and without any inspection of the evidence, though such evidence be in the record." Clearly, a bill of particulars filed in connection with a short form indictment or information, to which particulars a defendant is entitled on the tendering of a proper and timely motion therefor, constitutes an essential part of the "pleadings and proceedings" of the cause. (Italics ours.)
We come now to the question of whether the indictment herein, along with the facts recited in the bill of particulars and annexed documents, sets forth the crime of theft as defined in LRS 14:67.
The definition contained in the mentioned statute is: "Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."
Thus, for the conduct of this defendant to constitute the crime of theft there must have concurred four elements, namely, (1) a taking or misappropriation of a thing belonging to another, (2) the mentioned thing had some value, (3) absence of the consent of the other or the existence of fraudulent conduct, practices or representations on the part of the accused, and (4) an intent to deprive the other permanently.
The following questions, together with the answers thereto contained in the state's bill of particulars, disclose the manner in which the alleged theft occurred and are otherwise pertinent to a determination of this cause:
"Q. Was the alleged theft a misappropriation or a taking? State which. A. The theft herein charged was a taking.
* * * * * *
"Q. Did the accused commit the alleged theft by fraudulent conduct, practices or representations? State which. A. The accused committed the theft by means of fraudulent conduct, practices and representations performed in the following manner. On the date of the theft, the accused went to the residence of a daughter of Warren Wall in the Town of Jackson, Louisiana, where the accused had learned that Warren Wall was staying temporarily. The accused was unknown to Warren Wall. At the time, Warren Wall was in a state of shock resulting from an accident in the Town of Jackson which had occurred three or four hours earlier and in which Warren Wall's minor daughter and *695 two of his grandchildren were critically injured. The accused called upon Warren Wall in company of Hardy Travis, Town Marshal of the Town of Jackson and who was related to and well known to Warren Wall. Upon arriving at the residence where Warren Wall was, the accused stayed in his automobile in front of the residence and Hardy Travis went into the residence and told Warren Wall that Mr. Picou wanted to see him. When Warren Wall came out to the automobile, the accused presented him with a written document which was folded in such a manner that only the bottom portion thereof was visible to Warren Wall. The accused thereupon represented to Warren Wall that he, the accused, wanted to investigate the accident and that it was necessary for Warren Wall to sign the paper held by the accused in order for the investigation to be made. Whereupon the said Warren Wall signed the document presented to him, in the manner aforesaid, without knowing that the said document was actually a contract wherein the said Warren Wall transferred and delivered to the accused a twenty per cent interest in the cause of action owned by Warren Wall as a result of the accidental injuries to the minor daughter of Warren Wall, to-wit: Betty Wall.
* * * * * *
"Q. What interest or claim of ownership did Warren Wall have in said cause of action on the 7th day of August, 1957? A. The claim of one parent for injuries to the minor child of said parent caused by the fault of a third person.
* * * * * *
"Q. What was the total value of said cause of action as of August 7, 1957? A. The total value of the cause of action as of August 7, 1957 is unknown.
* * * * * *
"Q. How did the accused intend to permanently deprive the owner of said alleged cause of action? A. The accused intended to permanently deprive Warren Wall of a twenty percent interest in the cause of action in the following manner: On or about August 21, 1957, the accused caused the contract on which he had fraudulently obtained the signature of Warren Wall, transferring to the accused a twenty percent interest in the cause of action, to be filed in the office of the Clerk of Court and Recorder of Mortgages for the Parish of East Feliciana and to be recorded in Mortgage Book No. 35, page 518 of said office. The accused further caused notice of the filing of said contract, together with copies of same, to be served on the defendants in said cause of action, to-wit: Globe Indemnity Company of New York and Joseph H. Marix as well as on Warren Wall.
"Q. Who had possession of the alleged subject of the theft on the date alleged in the indictment? A. On the date alleged in the indictment, to-wit: August 7, 1957, Leon A. Picou, Jr. had possession of a twenty percent interest in the subject of the theft, fraudulently acquired in the manner hereinabove set forth, and Warren Wall had possession of the other eighty percent interest.
* * * * * *
"Q. Did Warren Wall voluntarily sign said contract? A. Warren Wall voluntarily signed the contract, relying on the fraudulent representations by the accused that the contract was nothing more than authority for the accused to investigate the accident in which the minor daughter of Warren Wall was injured.
"Q. If the contract was written please attach a copy thereof to the bill of particulars. A. A copy of the *696 contract and assignment to the accused is annexed hereto.
* * * * * *
"Q. Was the contract cancelled by accused? A. After Warren Wall had employed the law firm of Durrett, Hardin & Hunter of Baton Rouge to take such legal measures as might become necessary to annul the contract which had been fraudulently obtained by the accused, the accused, on or about the 14th day of October, 1957, authorized the Clerk of Court of the Parish of East Feliciana to cancel the contract from her records as will appear by reference to a copy of the letter addressed by the accused to said Clerk of Court which is annexed hereto."
The mentioned contract, dated August 7, 1957 and annexed to the state's bill of particulars, provided in part: "Personally Came And Appeared: Warren Wall * * * hereinafter referred to as `Client', who declared that he (she) does hereby employ Leon A. Picou, Jr., St. Francisville, Louisiana, hereinafter referred to as `Attorney', as his (her) attorney to investigate, prosecute and collect, whether by suit, compromise or otherwise his (her) claim arising from gravel truck accident of August 7, 1957 injuring my daughter Betty Wall * * * said claim being against ______ ______ and any and all other persons who might be responsible therefor.
"The said attorney accepts said employment and in consideration of his services rendered and to be rendered, client does hereby agree to pay to attorney Twenty (20%) per cent of whatever money, or real, personal or mixed property of any description whatever is collected if not necessary to file suit, and one third (331/3) per cent if necessary to file suit and client hereby assigns, transfers and delivers to attorney an interest in this cause as stipulated hereinabove whether by judgment or compromise. Client authorizes attorney to file any and all papers necessary in the prosecution of this claim.
"Neither client nor attorney shall have the right, without the written consent of the other, to settle, compromise, release, discontinue or otherwise dispose of such suit or claim.
"Attorney shall have the right at any time to withdraw from this contract in the event he concludes, from any information that he subsequently obtains, that client does not have a reasonably good possibility of recovering as a result of the aforementioned cause of action."
Under the circumstances revealed by the bill of particulars and annexed documents we are unable to conclude that this defendant, by his alleged fraudulent conduct, took something of valuean essential element, as before shown, in the commission of the crime of theft. The consummated contract was nothing more than an employment agreementa personal service undertakingunder which the accused would render legal services in the prosecution of Wall's cause of action. Thereunder, if the services produced favorable results he would be paid a stipulated percentage of the sum recovered (payment to him was entirely conditional, it depending on the happening of an uncertain event); otherwise he would receive nothing.
True, the contract recited that Wall transferred and delivered to the attorney an interest in the cause of action (20% or 331/3% of whatever sum is collected, the interest conveyed being dependent on whether collection is by compromise or suit). Evidently this recitation was inserted, pursuant to the provisions of LRS 37:218, only for the purpose of protecting the attorney's contingent fee as against third persons. In any event, however, the fact remains that the transferred interest in Wall's cause of action had no real value when the contract was executedit then had, as before shown, only a potential value. Supporting this observation is the district attorney's statement, contained in the bill of particulars, that: "The total *697 value of the cause of action as of August 7, 1957 is unknown." It may be further observed, in this connection, that unquestionably the attorney did not receive something that was salable and transferrable by him on the date of the so-called delivery.
Nor do the pleadings disclose an intention on the part of the accused at the time of the alleged taking to permanently deprive Wall of an interest in the cause of action. According to the bill of particulars this essential intention respecting permanent deprivation did not come into existence until August 21, 1957 (fourteen days after the charged taking occurred through the execution of the August 7, 1957 contract) when the accused recorded the instrument and caused service of copies thereof to be made on the persons responsible under the cause of action and on Wall.
Besides, such recordation could not and did not change the status of the accused under the contract or give to him any rights against Wall different from those he already had, for the agreement provided that neither of them could settle, compromise or otherwise dispose of the claim without the written consent of the other. Apparently the only purpose served by the recordation was to obtain the protection afforded by LRS 37:218 which is that, on a compliance with the provisions thereof, any settlement made by one of the parties to the contract without the written consent of the other would be null and the claim could thereafter be prosecuted as if no such settlement had been made. Incidentally, the recording of the instrument by the attorney was just as effective against him (and in favor of Wall) as against the client. Moreover, this accused, as shown by the bill of particulars, relinquished his rights under the recorded contract before any settlement of the cause of action occurred.
Since the indictment, when considered with the bill of particulars, discloses a lack of two essential elements of the crime of theft with which this accused was charged we hold that the motion to quash and the demurrer were correctly sustained by the trial judge.
For the reasons assigned the judgment appealed from is affirmed.
McCALEB, J., concurs with written reasons.
FOURNET, C.J., concurs in the decree being in accord with the views expressed in Justice McCALEB'S opinion.
SIMON, J., dissents with reasons.
McCALEB, Justice (concurring).
In general, I am in agreement with the majority opinion but I do not subscribe to the view that an interest in a claim for damages for personal injuries is not a thing of value which may be the object of a theft. Such a claim is an incorporeal movable and, if defendant had taken it by fraud, I think he would be subject to prosecution. But it is evident from the answers to the bill of particulars that defendant did not misappropriate or take the 20% (or 331/3%) interest in the damage claim of Wall by fraud; the only thing he thus obtained was the irrevocable right to represent Wall as his attorney on a contingent fee basis. In other words, the alleged object of the theft, i. e., interest in the claim, was not taken; the transfer of this interest was founded on a valid considerationprofessional services to be rendered Wall; the alleged fraud consisted of defendant's misrepresentation by which he assertedly obtained the employment, which, if true, gives rise only to a civil action for annulment of the contract.

Filed Jan. 8, 1959.
SIMON, Justice (dissenting).
With all due respect to my associates, I do not subscribe to the view set forth in the *698 majority opinion that the district attorney's statement contained in the bill of particulars that "The total value of the cause of action as of August 7,1957 (the date of the alleged crime), is unknown" had the effect of negativing the value of $1,875 affirmatively set forth in the indictment and assigned therein to the object of the theft, the 20% interest in the cause of action.
I readily concede, as pointed out by the majority, that the thing taken must have "some value", such value being an essential element of the crime of theft, but, as provided in LSA-R.S. 14:2, "`Anything of value' must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal * * *." Even though the bill of particulars stated the value of the thing taken was unknown as of the date of the taking, the question of what the value was and whether there was any value, no matter how slight, was a question of fact and a matter of proof to be established by the State and to be submitted to the jury. Neither the trial judge nor this Court has the right to determine the adequacy or lack of proof of such a fact. The determination of the value, if any, of the object of the theft as charged in the indictment rested exclusively within the province of the jury. Furthermore, the statement contained in the bill of particulars, that the thing alleged to have been the subject of the theft was unknown as of the date of the alleged theft, does not in itself make or describe the thing as valueless. The statement clearly sets out that though it has some value it was as of the date of the theft unknown and uncertain. This, however, in itself cannot affect or in any way negative or destroy the actual value of the thing alleged to have been stolen as specifically charged in the bill of indictment after full investigation by the grand jury.
Furthermore, even if the statement in the bill of particulars that the value of the thing taken was unknown as of August 7, 1957, was inconsistent with the value specified in the indictment, the motion to quash should nevertheless have been overruled, for the reason that a bill of particulars cannot create a defect in a valid indictment. The prosecution must be conducted exclusively on what was contained within the four corners of the indictment, and we cannot look beyond its four corners to determine its validity. There can be no prosecution on a bill of particulars. Nor can the contents of a bill of particulars, whatsoever is set forth therein, alter, change, amend or affect the indictment. A bill of particulars, when furnished, supplies the accused and the court additional information concerning the accusation and in its legal effect operates to limit the prosecution in its proof to the specifications therein contained, but it cannot create a defect in the indictment. It cannot be furnished the accused to enable him to demur to the indictment; nor, if the indictment is not demurrable on its face, can the furnishing of a bill of particulars make it so.
This view is in accord with the weight of authority, as expressed in 4 Wharton's Criminal Law and Procedure (1957), Sec. 1870, p. 725:
"Although in so far as its purpose is concerned a bill of particulars is in the nature of a pleading, yet it forms no part of the record, and cannot create or cure a defect in the indictment. Thus an indictment sufficient on its face cannot be made demurrable by a bill of particulars, and when an indictment is insufficient on its face, it cannot be made valid by the service of a bill of particulars."
See also 27 Am.Jur. Verbo Indictments and Informations, Sec. 112, pp. 672, 673:
"The office of a bill of particulars is to supply the accused and the court additional information concerning an accusation that the defendant has committed an act or acts constituting a criminal offense. In so far as its purpose is concerned a bill of particulars is in the nature of a pleading, and when *699 furnished, operates to limit the prosecution in its proof to the specifications therein contained, although the prosecution is not limited in its proof by all the conclusions of law that may be drawn from the facts which are specified in the bill * * * A bill of particulars cannot create or cure a defect in the indictment or information. It cannot be furnished the accused to enable him to demur to the indictment; nor, if the indictment is not demurrable on its face can the furnishing of a bill of particulars make it so. A bill of particulars is not an amendment of the indictment or information and cannot change the offense charged in the indictment or in any way aid an indictment fundamentally bad * * *"
See also 42 C.J.S. Indictments and Informations § 156, pp. 1101-1103; 8 A.L.R. 550; State v. Lehigh Valley R. Co., 94 N.J.L. 171, 111 A. 257, 10 A.L.R. 977, 982-983; 32 Tulane Law Review 47, 58.
The jurisprudence of this state with regard to the effect on the indictment or information of a bill of particulars when furnished, is, to say the least, conflicting. See 32 Tulane Law Review 60-62.
In State v. Long, 129 La. 777, 56 So. 884, and in State v. Hewitt, 131 La. 115, 59 So. 34, the principle was established that a bill of particulars does not become a part of the indictment, does not amend it, and cannot have the effect of vitiating a valid indictment or information. These cases have never been overruled and, in fact, were cited with approval in the comparatively recent case of State v. Straughan, 229 La. 1036, 87 So.2d 523.
In spite of these decisions, this Court in later decisions and without citation of authority referred to bills of particulars as "amendments" or "amplifications" of the indictment, but these were mere expressions of opinion of the writer and not necessary to the actual holdings of the cases. State v. Hollingsworth, 164 La. 167, 113 So. 805; State v. Lauvet, 164 La. 543, 114 So. 151; State v. Miller, 170 La. 51, 127 So. 361; State v. Brooks, 173 La. 9, 136 So. 71; State v. Smith, 179 La. 614, 154 So. 625. And in State v. Lemoine, 178 La. 1070, 152 So. 907, 908, this Court, completely ignoring its previous holding in the Long and Hewitt cases, held that an indictment should have been quashed because of statements contained under a bill of particulars, merely stating that "the particulars, thus furnished, are deemed, in law, to constitute a part of the bill of indictment" without citing any supporting authority.
In the subsequent cases of State v. Bienvenu, 207 La. 859, 22 So.2d 196; State v. Varnado, 208 La. 319, 23 So.2d 106, and State v. Pettifield, 210 La. 609, 27 So.2d 424, this Court returned to the view of the Long and Hewitt cases, supra.[1] In State v. Bienvenu, supra, the Court cited the Long and Hewitt cases with approval and stated [207 La. 859, 22 So.2d 198]:
"The sole office of a bill of particulars is to give the adverse party information which the pleadings by reason of their generality do not give and to compel the State to observe certain limitations in offering evidence. A bill of particulars cannot change the offense charged nor in any way aid an indictment or information fundamentally bad."
In State v. Varnado, supra [208 La. 319, 23 So.2d 126], the Court speaking of a bill of particulars stated that:
"`* * * forms no part of the indictment and cannot cure it if it is defective * * * and, when furnished, operates to limit the prosecution in its proof to the specifications therein *700 contained * * *' but `A bill of particulars cannot create or cure a defect in the indictment or information. It cannot be furnished the accused to enable him to demur to the indictment; nor, if the indictment is not demurrable on its face, can the furnishing of a bill of particulars make it so. A bill of particulars is not an amendment of the indictment or information * * *.'"
In State v. Pettifield, supra, the Court quoted from the Bienvenu case that the purpose of a bill of pariculars was to give information to the accused and to limit the state's evidence, and stated that the defendant is not prosecuted on bills of particulars, but solely on the bill of indictment or information.
Nevertheless, in State v. Bessar, 213 La. 299, 34 So.2d 785, 789, in which a bill of particulars had been furnished, this Court in ruling on a motion to quash the indictment, said:
"The indictment * * * being in the short form * * * the defendant was entitled to a bill of particulars * * * and this bill, when furnished, operated to limit the scope of proof on the trial by restricting the introduction of evidence to the proof of those facts set out in the bill of particulars * * Consequently, the court in considering the motion to quash the indictment must construe those facts as set out in the bill of particulars to be true and determine whether or not if proved they constitute the crime charged." (Emphasis supplied.)[2]
The Bessar case was quoted approvingly in State v. Masino, 214 La. 744, 38 So.2d 622, 623, the Court stating:
"The court, in considering the motion to quash the indictment, must construe those facts as set out in the bill of particulars to be true and determine whether or not, if proved, they constitute the crime charged. It is of no moment whether we say that a bill of particulars is an amendment or an amplification of the indictment or a restriction of proof to be offered by the State * * * The issue to be decided on a motion to quash is whethor not the indictment itself is defective on its face, taking as true what is alleged in the bill of particulars. * *"
Once again, in State v. Dabbs, 228 La. 960, 84 So.2d 601, 602, the Court reinstated its original holdings in the Long and Hewitt cases, supra, holding that a bill of particulars cannot create a defect in a valid indictment.[3] In the Dabbs case, we said:
"Irrespective of what may be contained or set forth in the bill of particulars relied on by the defendant to support his contention * * * we are not concerned therewith * * * There can be no prosecution on a bill of particulars * * * A bill of particulars can neither create a defect in a bill of information nor remedy a defective one. Neither can it serve as a vehicle to afford a defendant a right of demurringin this instance a motion to quashwhere the bill of information on its face is not demurrable."
The Dabbs case was quoted with approval in State v. McQueen, 230 La. 55, 87 So.2d 727, and in State v. Straughan, supra, wherein we held that charging the defendant by the name of the crime and the *701 number of the article of the criminal code denouncing the crime, as provided by LSA-R.S. 15:235, is violative of Article I, Sections 9 and 10, of the state constitution, LSA, is fundamentally defective, and cannot be cured by answers furnished in a bill of particulars.[4] In the Straughan case [299 La. 1036, 87 So.2d 534] we stated that it is "almost universally held that a bill of particulars forms no part of an indictment or information", that a bill of particulars can neither aid one that is fundamentally bad nor create a defect in a valid one, and that under Article I, Section 9 of our state constitution, a prosecution must be by indictment or information and not by a bill of particulars.
State v. Ledent, 230 La. 780, 89 So.2d 299, 300, involving a charge by name of crime and article number, followed the McQueen and Straughan decisions. In that case we stated:
"It is now well-settled law of this state that an indictment or information which refers to the crime charged by name and article number only is fundamentally defective and insufficient. A resort to the furnishing of a bill of particulars will not satisfy our constitutional requirements that the information or indictment standing alone shall state the nature and cause of the accusation."
Subsequent to the Ledent decision, this Court in State v. Peterson, 232 La. 931, 95 So.2d 608, and in State v. Kershaw, 234 La. 579, 100 So.2d 873, again seemed to change its position and to be of the opinion that the answers furnished in a bill of particulars must be considered in passing on a motion to quash the indictment or information.
To summarize, the majority opinion is in accord with expressions in the Hollingsworth, Lauvet, Miller, Brooks, and Smith cases, supra, and with holdings in the Lemoine and Bessar cases, supra.
On the other hand, the majority opinion is in direct conflict with the holdings in the Long, Hewitt, Bienvenu, Pettifield, Dabbs, McQueen and Straughan cases, in conflict with expressions in the other cases cited above, and in conflict with the overwhelming weight of authority.
With all due respect, as will be observed from the foregoing, our jurisprudence presents a vacillating course, thus creating a deficit in vigor and a deficit in certainty, and an unenviable condition which, in my view, should not be continued or allowed to prevail.
I respectfully dissent.
NOTES
[1] However, in State v. Davis, 208 La. 954, 23 So.2d 801, handed down within the same year, it was held that any defect in bill of information, no matter how serious, can be cured by the furnishing of a bill of particulars, which "amplified" the bill of information. This case was subsequently overruled by the Straughan case, supra.
[2] It does not follow that because the evidence is restricted to the proof of those facts set forth in the bill of particulars, the court must consider what is alleged in the bill of particulars in passing on the motion to quash. It is with the emphasized statement in the above question from the Bessar case that the writer disagrees.
[3] This was the holding of the Dabbs case. Any consideration in the opinion in that case of facts alleged in the bill of particulars was for the purpose of showing the inapplicability of certain cases cited by counsel for defendant and was not necessary to the decision.
[4] This has been distinguished from the short form of indictment for a crime listed among the forms enumerated in LSA-R.S. 15:235, which has generally been held valid. State v. Elias, 234 La. 1, 99 So.2d 1.